(69 South. 837)

No. 21015.

TEXAS & P. RY. CO. v. RAILROAD COMMISSION OF LOUISIANA. ·

(Oct. 18, 1915.)

*(Syllabus by the Court.)*

1. CARRIERS ⚖═12—UNREASONABLE RATES—AWARD OF DAMAGES—POWER OF RAILROAD COMMISSION.

Neither the Constitution, nor any statute, whether directly or by fair implication, confers upon the Railroad Commission of Louisiana jurisdiction to assess, or award, against a railroad company, damages, alleged to have been sustained by a shipper or consignee by reason of its observance of a freight rate authorized by the Commission, but subsequently declared to be unreasonable. Whether such damages are recoverable in an ordinary action in a court is a question which is not involved in this case.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. ⚖═12.]

2. RAILROADS ⚖═9—FINDINGS OF RAILROAD COMMISSION—REVIEW BY COURTS.

The Interstate Commerce Commission is vested with judicial power and a certain jurisdiction, concurrent with that of the Circuit and District Courts of the United States; whereas such power is withheld from the Railroad Commission of Louisiana, the findings of which are inconclusive, and reviewable in the court of ordinary jurisdiction.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. ⚖═9.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the Texas & Pacific Railway Company against the Railroad Commission of Louisiana. From judgment for plaintiff, defendant appeals. Affirmed.

Wylie M. Barrow, Asst. Atty. Gen., for appellant. Howe, Fenner, Spencer & Cocke, of New Orleans, for appellee.

Statement of the Case.

MONROE, C. J. During the season of 1913 and 1914 the Valverda Planting & Manufacturing Company, Limited, made numerous shipments of sugar and molasses over the line of the Texas & Pacific Railway Company, from Valverda Spur, La., to New Orleans, La. The Texas & Pacific Railway Company charged and collected upon these shipments a freight rate of 15 cents per hundred pounds. This rate which was charged and collected by the railroad was the duly published rate authorized by the Railroad Commission of Louisiana, and named, in Texas & Pacific Railway tariff, "L. C. No. 20–B," issued under authority No. 8943, of the Railroad Commission of Louisiana.

After these shipments of sugar and molasses had been made, the Railroad Commission, on May 14, 1914, entered an order, No. 1729, changing the published tariff rate on sugar and molasses from Valverda to New Orleans from 15 cents a hundred pounds to 10 cents a hundred pounds. The Texas & Pacific Railway Company acquiesced in this order, and put into effect this lower rate of 10 cents per hundred pounds fixed by the Railroad Commission.

Subsequently, on July 1, 1914, the Railroad Commission entered an order, No. 1754 which is as follows:

"Railroad Commission of Louisiana.
"Order No. 1754.
"Valverda Planting & Manufacturing Company
v. The Texas & Pacific Railway
Company. No. 2149.
"Refund of 5 Cents per 100 Pounds on Sugar and Molasses.

"The complaint in this case was filed in regular manner, and, after usual delays and due

notice to the defendant company, a hearing and full investigation was made of the complaint.

"It appears that, during the seasons of 1913 and 1914, the Valverda Planting & Manufacturing Company, Limited, shipped a large quantity of sugar and molasses from Valverda Spur to New Orleans, La., over the Texas & Pacific Railway, amounting to 1,200,800 pounds of sugar and 508,715 pounds of molasses, or a total of 1,709,515 pounds of sugar and molasses. The freight rate charged by the Texas & Pacific Railway Company, the defendant in this case, on these said shipments was 15 cents per 100 pounds; the total charge for the entire amount shipped being $2,564.28.

"On the complaint of the Valverda Planting & Manufacturing Company, Limited, this Commission, on May 14, 1914, after a full investigation, established a rate of 10 cents per 100 pounds to apply on sugar and molasses from Valverda Spur to New Orleans, La.

"The complainant now asks that the Commission apply the rate of 10 cents per 100 pounds to the shipments of sugar and molasses which moved, prior to its establishment, during the sugar season of 1913 and 1914. In other words, the Commission is asked to require the Texas & Pacific Railway Company to refund to the Valverda Planting & Manufacturing Company, Limited, 5 cents per 100 pounds on the 1,709,-515 pounds of sugar and molasses shipped from Valverda Spur to New Orleans, La., during the seasons of 1913 and 1914, which, in the aggregate, amount to $854.75, which is claimed by the shipper to be the amount paid in excess of a reasonable freight charge.

"It appears from the record that the Texas & Pacific Railway Company, through its duly authorized representatives, has offered to protect a rate of 11½ cents per 100 pounds on the shipments herein referred to, and to make refund to the shipper accordingly, in compromise of this controversy. The rate of 10 cents per 100 pounds, which was established by the Commission's order No. 1729, is a reasonable rate to apply to the shipment herein mentioned. A rate of 15 cents per 100 pounds on sugar and molasses which was charged and collected, to the extent that it exceeds the rate of 10 cents per 100 pounds, was excessive and unreasonable, and the shipper is entitled to a refund of 5 cents per 100 pounds on the shipments referred to.

"The premises considered, it is therefore ordered, that the Texas & Pacific Railway Company be, and it is hereby, commanded and required, within 30 days from the date of this order, upon the presentation of paid expense bills by the shipper, to refund the Valverda Planting & Manufacturing Company, Limited, the difference between the reasonable rate of 10 cents per 100 pounds and the excessive and unreasonable rate of 15 cents per 100 pounds, which was charged and collected on the shipments of sugar and molasses made by the said Valverda Planting & Manufacturing Company, Limited, from Valverda Spur to New Orleans, La., during the season of 1913 and 1914.

"By Order of the Commission."

The railway company brought this suit, contesting the validity of the above-quoted order, on the ground that it is ultra vires of the Commission, and the Commission answered (in part) as follows:

"It admits that the rate of 15 cents per 100 pounds, mentioned in the Commission order No. 1754, * * * was published in the Texas & Pacific Railway's tariff 'L. C. No. 20–B,' which was issued under the Railroad Commission's authority No. 8943 R. But it denies that such rate was reasonable or just. * * * It denies that order No. 1754 is unreasonable or unjust, or that the order is null and void or beyond the powers conferred upon the Commission. * * * Further answering, defendant avers that, for each day that the putting into effect and operation of order No. 1754 is suspended by the filing of this suit, the Texas & Pacific Railway Company * * * is required to forfeit and pay to the state of Louisiana the sum of not less than $10 nor more than $50 per day, in case the said order is maintained on the final trial hereof."

The district court gave judgment for plaintiff, annulling the Commission's order No. 1754, and the Commission has appealed.

## Opinion.

[1] The defendant Commission was created and its powers conferred by the following articles of the Constitution and statutory law (omitting so much as relates to corporations, other than railroads, i. e., express and telegraph companies, etc.) to wit:

"Art. 283. A Railroad * * * Commission, is hereby created; to be composed of three members. * * * They shall be known as the Railroad Commission of Louisiana. * * *

"Art. 284. The power and authority is hereby vested in the Commission, and it is hereby made its duty, to adopt, change, or make reasonable and just rates, charges and regulations, to govern and regulate railroad, * * * freight and passenger tariffs and service, * * * to correct abuses, and prevent unjust discrimination and extortion in the rates for the same, on the different railroads, * * * of this state, and to prevent such companies from charging any greater compensation in the aggregate for the like kind of property or passengers, * * * for a shorter than a longer distance over the same line, unless authorized by the commission

to do so in special cases; to require all railroads to build and maintain suitable depots, switches and appurtenances, wherever the same are reasonably necessary at stations, and to inspect railroads and to require them to keep their tracks and bridges in a safe condition, and to fix and adjust rates between branch or short lines and the great trunk lines with which they connect, and to enforce the same by having the penalties hereby prescribed inflicted through the proper courts having jurisdiction.

"The Commission shall have power to adopt and enforce such reasonable rules, regulations and modes of procedure, as it may deem proper for the discharge of its duties, and to hear and determine complaints that may be made against the classification or rates it may establish, and to regulate the mode and manner of all investigations and hearings of railroad companies and other parties before it, in the establishment of rates, orders, charges, and other acts, required or authorized by these provisions. The commissioners shall have power to summon and compel the attendance of witnesses, to swear witnesses, and to compel the production of books and papers, to take testimony under commission, and to punish for contempt as fully as is provided by law for the district courts.

"Art. 285. If any railroad * * * company, or other party in interest, be dissatisfied with the decision or fixing of any rate, classification, rule, charge, order, act or regulation, adopted by the Commission, such party may file a petition setting forth the cause of objection to such decision, act, rule, rate, charge, classification or order, or to either or to all of them, in a court of competent jurisdiction, at the domicile of the Commission, against said Commission as defendant, and either party to said action may appeal the case to the Supreme Court of the state, without regard to the amount involved. * * *

"Art. 286. If any railroad * * * company, subject hereto, directly or indirectly, or by any special rate, rebate, or any other device, shall intentionally charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation for any service rendered by it, than it charges, demands or receives from any other person, firm or corporation, for doing a like and contemporaneous service, or shall violate any of the rates, charges, orders, rules or decisions of said Commission, such railroad * * * company, shall forfeit and pay to the state not less than one hundred dollars nor more than five thousand dollars, to be recovered before any court of competent jurisdiction, at the suit of the state, at the domicile of the Commission.

"Provided, that every order or decision of the Commission fixing and establishing a rate or charge for the transportation of passengers or freight, * * * within the state shall go into effect at such time as may be fixed by the Commission and shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction, rendered on final trial in a suit to set aside and annul the same.

"Provided, that, whenever any rate, charge, rule, regulation, order or decision of the Commission is contested in court, as provided by this Constitution, or by any amendment thereto, and the same is maintained on final trial by a court of competent jurisdiction, the - railroad * * * company * * * contesting the same, shall forfeit and pay to the state of Louisiana the sum of not less than ten ($10) dollars and not more than fifty ($50) dollars per day, for each day that the putting into effect and operation of the rate, order, charge, rule, regulation, or decision of the Commission may have been suspended by such suit, to be found and adjudged by the court in which such suit may be brought; and in all such cases the said court shall, in its judgment, maintaining said rate, charge, rule, regulation, order or decision, enter up a decree and judgment against the plaintiff therein, condemning such plaintiff to pay to the state of Louisiana the amount of the said penalty or forfeiture so found and adjudged by it. * * * The power and authority of the Commission shall affect and include not only the transportation * * * between points within this state, * * * but shall also * * * include all matters and things connected with and concerning the service to be given by railroad * * * companies, and corporations in the state, and their operations within the state. * * *

"Art. 288. The General Assembly may add to or enlarge the powers and duties of said Commission, or confer other powers and duties on them * * * and may add other penalties to make the work of said Commission effective."

To the articles thus quoted is to be added Act 175 of 1912, p. 318, entitled (quoting the title in part):

"An act to authorize and empower the Railroad Commission * * * to determine and award shippers or consignees, money damages arising from violation of rates, classifications, rules, regulations or orders adopted by the Commission; * * * to fix a period of prescription for the filing of such claims for damages before the Commission, and for the filing of suits for the collection of such damages, as may be awarded by the Commission. * * *"

Conforming to its title, the act authorizes the Commission to hear complaints as to damages, "arising from violations of rates" adopted by it, and, contradictorily with any railroad company complained of, to condemn it, in any given case, to pay within a given delay such amount as it may award, the complainants remedy to enforce the payment being, however, an ordinary civil action, in

damages, in a court of competent jurisdiction—

"except that, on the trial of such suit, the finding and order of the Railroad Commission * * * shall be prima facie evidence of the facts therein stated."    Section 3.

It will be observed that the act, in specific terms, vests the Commission with jurisdiction to award damages for violations of rates adopted by it; and it will also be observed that the jurisdiction which the Commission is assuming to exercise in the matter under consideration is not within the terms of that grant, since plaintiff has not been charged with the violation of any rate or order adopted or made by the Commission, but is admitted to have collected the money, which the Commission now orders it to refund, agreeably to a rate published by it and approved by the Commission.    Hence it is that the learned counsel for the Commission appeals directly to the Constitution as the source of the jurisdiction which the Commission is now assuming to exercise.    But if the jurisdiction to order the refunding of money, collected in accordance with rates approved by it, is included in the general grant of the Constitution to "adopt, charge and make rates," and "correct abuses," etc., a fortiori should the jurisdiction to compel the refunding of money, collected in violation of rates approved by it, be so included; and, in that view, Act 175 of 1912, and so much of article 288 of the Constitution as authorizes the General Assembly to "add to or enlarge the powers and duties of said Commission," would seem to be unnecessary, for, according to the argument of counsel, the general power to do the things specified carries with it the power to adopt any means which the Commission may deem appropriate to the exercise of such general power.    The general grant of power, as made by the Constitution (in so far as it bears upon the issue here presented), relates, however, only to the

correction of abuses, arising from unreasonable, unjust, and discriminatory rates, and the Constitution itself provides the means for the exercise of that power, by authorizing the Commission to "adopt, charge and make rates," and by providing severe penalties, to be enforced in the courts and to inure to the state, for any disregard of the rates so adopted, changed, or made.    To that authority the General Assembly, by the act of 1912, has added the authority to assess, in favor of a shipper or consignee, complaining of a disregard of the rates, adopted, etc., by the Commission, the damages shown to have been sustained; but neither the Constitution nor any statute, whether directly or by fair implication, confers upon the Commission jurisdiction to assess, or award, against a railroad company damages alleged to have been sustained by a shipper or consignee by reason of its observance of a rate authorized by the Commission.

[2] Whether such damages are recoverable in an ordinary action in a court is a question upon which we express no opinion, as it is not involved in this case.    We do not quite see, however, in what way the determination of that question would involve any fixing of rates, by the courts, since the cause of action, if any there be, would appear to arise only after the disestablishment of a higher (unreasonable) rate, by the Commission, and would be predicated upon an alleged overcharge in the higher (and disestablished) rate. Nor are we able to see in what way the particular rulings of the United States courts, to which we are referred, relating to the jurisdiction of the Interstate Commerce Commission, can affect the issue presented in this case, since those rulings are predicated upon an act of Congress which confers upon that Commission judicial powers and a certain jurisdiction, concurrent with that of the Circuit and District Courts of the United

States; whereas all such power and jurisdiction are withheld from the defendant herein; even its findings under the act of 1912 being inconclusive and reviewable in the courts of ordinary jurisdiction.

The judgment appealed from is therefore affirmed.