## EL PASO & S. W. R. CO. v. ARIZONA CORPORATION COMMISSION et al.

### No. E–132.

District Court, D. Arizona.
July 20, 1931.

Knapp & Boyle, of Tucson, Ariz., H. H. McElroy, of San Francisco, Cal., W. A. Hawkins, of Fort Worth, Tex., and J. L. Stewart, of Houston, Tex., for complainant.

The Attorney General of Arizona, for Arizona Corporation Commission and members.

Samuel White, of Phoenix, Ariz., and Elmer Westlake and James E. Lyons, both of San Francisco, Cal., for Arizona Eastern Ry. Co.

Chalmers, Fennemore & Nairn, of Phoenix, Ariz., and E. W. Camp, of Los Angeles, Cal., for Atchison, T. & S. F. Ry. Co.

Baker & Whitney, of Phoenix, Ariz., Elmer Westlake and James E. Lyons, both of San Francisco, Cal., for Southern Pac. Co.

Rice & Mathews, of Globe, Ariz., for Apache Powder Co.

Chalmers, Fennemore & Nairn, of Phoenix, Ariz., for Ray & Gila Valley Ry. Co.

Leroy Anderson, of Prescott, Ariz., and George W. Nilsson, of Los Angeles, Cal., for Verde Tunnel & Smelter R. R. Co.

Before SAWTELLE, Circuit Judge, and JAMES and JACOBS, District Judges.

JACOBS, District Judge.

This case comes before the court on motion to dismiss and agreed statement of facts. The motion to dismiss the bill of complaint is on the following grounds: First, that it appears upon the face of said bill that the facts therein stated are not sufficient to constitute a valid cause of action in equity; second, that this court has no jurisdiction of the subject-matter thereof. The case comes within the provisions of section 266 of the Judicial Code (28 USCA § 380). At a hearing heretofore had before three judges, a preliminary injunction was issued and is still in full force and effect.

It appears from the agreed statement of facts that prior to May 3, 1921, all of the intrastate rates on powder and explosives in effect in Arizona were those prescribed by the Arizona Corporation Commission. That on July 29, 1920, the Interstate Commerce Commission made and entered its general order increasing interstate rates 25 per cent., Ex parte 74, 58 I. C. C. 220. The carriers then applied to the Arizona Corporation Commission for authority to increase intrastate rates to the level of the interstate rates as increased under said Ex parte 74. This authority, however, was denied by the Arizona Commission by its order of October 18, 1920, Docket No. 1092–R–36. The Arizona carriers then applied to the Interstate Commerce Commission for an order authorizing a 25 per cent. increase in intrastate rates within Arizona and, after a hearing, the Commission having found that the intrastate rates were unjustly discriminating against interstate commerce and that the discrimination should be removed by increasing the intrastate rates to correspond with the increase made by the carriers under Ex parte 74, the Commission granted this petition on May 3, 1921, 61 I. C. C. 572, and authorized a 25 per cent. increase in intrastate rates within Arizona. Thereafter, on May 3, 1922, a joint conference was held between representatives of the state commissions and the Interstate Commerce Commission concerning a plan of co-operation between the state commissions and the Interstate Commerce Commission for maintaining the proper relationship between the state and interstate rates and a plan of co-operation was reported and approved.

Shortly after this conference on May 24, 1922, the Arizona Corporation Commission set aside its order of October 18, 1920, and approved and authorized increases in intrastate rates to conform to the increases made in interstate rates under the order in Ex parte 74. In authorizing said increases in intrastate rates to conform to the increases in interstate rates, the Arizona Corporation Commission said:

"The intrastate rates, fares and charges applicable to the transportation of persons and property within the State of Arizona authorized and ordered by the Interstate Commerce Commission were published and made effective. No attempt was made by this Commission to interfere with or prevent said order from becoming effective and said rates, fares and charges have been recognized as legally established, and we are of the opinion that they should be ratified and confirmed by this Commission, to be continued in effect until changed by lawful authority.

"It is, therefore, ordered: that our order herein issued on October 18, 1920, be and it is hereby vacated and

"It is further ordered: that the rates, fares and charges prescribed by the Interstate Commerce Commission in its order in Docket No. 11971 of May 3, 1921, be and they are hereby ratified and confirmed until changed by lawful authority. By order of the Arizona Corporation Commission."

The order of the Interstate Commerce Commission authorizing the 25 per cent. increase remained in effect without change or modification until June 1, 1922. Shortly after the Arizona Corporation Commission had approved the 25 per cent. increase in Arizona intrastate rates, the Interstate Commerce Commission, on June 1, 1922, made its further order, wherein it recited the facts relating to the increase in Arizona intrastate rates, and said:

"It further appearing * * * that said increased intrastate rates, fares and charges prescribed by and established pursuant to the order heretofore entered by this Commission will, if said order of said Commission be vacated, continue in effect as the lawfully established and applicable intrastate rates unless and until changed by further affirmative order of the competent authority of said state;

"It is ordered that the aforesaid order heretofore entered in the above entitled proceeding No. 11971 be and it is hereby vacated and set aside, effective from and after this date, and that said proceeding be discontinued."

This order, in effect, restored to the Arizona Corporation Commission power to deal with individual rates in Arizona for the future, and the Arizona Corporation Commission did from time to time thereafter authorize and approve special rate authorities on powder and other explosives. These special rate authorities were issued by the Arizona Corporation Commission without a hearing and in response to and solely upon representations contained in letters and telegrams from agents of the carriers, representing that the requested rates were reductions over the present rates.

On June 2, 1922, the Interstate Commerce Commission, having ordered a certain 10 per cent. reduction in rates and charges applicable to transportation of interstate traffic effective July 1, 1922, and it appearing to the Arizona Corporation Commission that similar reductions should be made on intrastate traffic, the Arizona Corporation Commission entered the following order: "That all railroads within the State of Arizona and all traffic bureaus issuing traffic publications for said railroads be and they are hereby authorized to publish and make effective similar reductions in rates and charges applicable to the transportation of intrastate traffic as will be made effective on interstate traffic, said charges to be made effective on not less than five days notice."

On the 6th day of August, 1923, in a proceeding by defendant Apache Powder Company and others before the Arizona Corporation Commission, Docket No. 1601–R–150, in which the Apache Powder Company sought a reparation as an award of damages for excessive charges theretofore collected under rates prescribed by the Arizona Corporation Commission and the intrastate rates fixed by the Interstate Commerce Commission and approved by the Arizona Corporation Commission, as above stated, the Arizona Corporation Commission entered an order reducing said rates and prescribing a reasonable rate for the future and ordered: "That the defendant herein shall pay to the complainant, the Apache Powder Company, as reparation and for damages sustained all charges in excess of the rates herein found to be reasonable which have been collected within two years from the date of the filing of the complaint in this case."

On the 9th day of May, 1924, at a hearing before the Arizona Corporation Commission for the purpose of determining the amount of reparation to be ordered, it appearing from the proof that all of the payments of freight rates were made to the El Paso & Southwestern Railroad Company (complainant herein), the Commission modified its order previously made ordering reparation to be made by all of the defendants and entered its order directing the El Paso & Southwestern Railroad Company, complainant herein, to pay to the Apache Powder Company the sum of $80,814.43 principal and interest and further interest at the rate of 6 per cent. per annum from February 4, 1924, until paid, thus eliminating all railroad defendants from the case.

Before the filing of the bill of complaint herein and after the order of the Arizona Corporation Commission made on the 6th day of August, 1923, in which the Commission fixed intrastate rates for the future and ordered reparation to the defendant Apache Powder Company, the carriers filed their complaint with the Interstate Commerce Commission, attacking the validity of the railroad freight rates on powder and high explosives from Curtis, Ariz., to points of

destination within the state of Arizona in intrastate commerce, alleging the rates to be unlawful and causing undue and unreasonable advantage, preference, and prejudice in favor of the Apache Powder Company and as unjust discrimination against interstate commerce. This proceeding was designated upon the records of said Interstate Commerce Commission as Docket No. 16412. .

That prior to the filing of said petition in said Docket No. 16412, this defendant Apache Powder Company filed with said Interstate Commerce Commission its petition against complainant El Paso & Southwestern Railroad Company and other carriers, attacking the rates established and maintained by complainant and other carriers for the transportation of powder from Curtis, Ariz., to points in California and elsewhere outside of the state of Arizona in interstate commerce; that said petition was designated upon the records as Docket No. 14687. This petition was consolidated with Docket No. 16412. They were heard together and decision rendered January 7, 1929, in which relief was denied in Docket No. 16412 and the proceeding discontinued. In Docket No. 14687, the Commission found that the rates attacked were unreasonable and prejudicial to the defendant and ordered the carriers to cease and desist from practicing such prejudice.

In the agreed statement of facts, the following stipulation appears: "The complainant and connecting lines or other carriers which handled the shipments involved in this proceeding complied with the orders, decisions and rate authorities heretofore set forth by the publication of the rates applicable to powder and other explosives authorized or required to be published thereby."

The authority of the Interstate Commerce Commission to raise or lower intrastate rates to the level of interstate rates to avoid unjust discrimination against interstate commerce is not questioned. .

It appears from the foregoing facts and the stipulation that every rate charged and collected by the carriers herein was fixed and prescribed by the Interstate Commerce Commission, the Arizona Corporation Commission, or the Interstate Commerce Commission, and approved by the Arizona Corporation Commission, and that no rates or charges were made or collected by the carriers in excess of those that had been theretofore fixed and prescribed by lawful authority.

Under the Federal Plan of Common Carrier Regulation, the carrier is required to initiate rates and is commanded to initiate only those rates that are "just and reasonable."

The Commission may, upon complaint of a shipper or upon its own motion, review the rate fixed by the carrier. If it finds the rate to be excessive, unjust, or unreasonable, it may then fix a just and reasonable rate to be charged in the future and order the carrier to pay the shipper as damages all moneys collected by the shipper under the unreasonable rate in excess of the rate the Commission finds would have been a reasonable rate during that period. This is a penalty on the carrier for disregarding its duty under the law and initiating an unreasonable rate. .

■ A different rule is provided in Arizona. The Constitution, section 3, article 15, provides: "The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected. * * * "

The carrier is precluded from initiating rates as under the federal plan, and may only charge and collect those rates that have been approved and prescribed by the Commission.

The authority of the Arizona Corporation Commission to order reparation is expressed in paragraph 2347, Revised Statutes of Arizona 1913 (Civ. Code), as follows: "When complaint has been made to the commission concerning any rate, fare, toll, rental or charge for any product or commodity furnished or service performed by any public service corporation, and the commission has found, after investigation, that the public service corporation has charged an excessive or discriminatory amount for such product, commodity or service, the commission may order that the public service corporation make due reparation to the complainant therefor, with interest at the legal rate from the date of collection; provided, no discrimination will result from such reparation."

■ This provision of the act must necessarily refer to rates and charges made and collected in excess of those fixed and prescribed by the Commission, as the carrier is not permitted to charge or collect any sum whatever until after the Commission has prescribed "just and reasonable rates and charges to be made and collected."

The state of Louisiana has a law quite similar to that of Arizona, in construing which the Supreme Court of Louisiana, in the case of Texas & P. Ry. Co. v. Railroad Commission of Louisiana, 137 La. 1059, 69 So. 837, held: "Neither the Constitution,

nor any statute, whether directly or by fair implication, confers upon the Railroad Commission of Louisiana jurisdiction to assess, or award, against a railway company, damages, alleged to have been sustained by a shipper or consignee by reason of its observance of a freight rate authorized by the Commission."

This in the face of an act of the Legislature authorizing the Commission to "hear complaints as to damages arising from violations of rates adopted by the Commission."

The state of Alabama has a law very similar to that of Arizona, and in construing this law and the constitutional provisions of the state affecting the question the Supreme Court of Alabama, in the case of T. R. Miller Mill Co. v. Louisville & Nashville R. Co., 207 Ala. 253, 92 So. 797, in an action to recover alleged excessive freight charges with statutory penalties, held:

"There can be but one 'lawful rate' in force at a given time, and that rate, by the terms of Code 1907 * * * is a rate which has been filed and approved by the Railroad Commission and published by the carrier and behind that rate, so long as it remains unchanged, and so far as its application to specific shipments is concerned, neither shipper nor carrier can go, and courts cannot inquire.

"A freight rate which has been filed, approved, and published by the Railroad Commission is the lawful rate, even though unreasonable, and is the only rate which the carrier can charge without violating the statutes and penal laws; and, where a carrier has charged such rates, the shipper is not entitled to recover as for any excess charges, nor for penalties accruing under Code 1907. * * *

"It seems to us that this proposition is self-evident and fundamental, and that it is the foundation of our regulatory system, without which it would fail in its primary purposes, which are to stabilize rates and charges, and to insure equality to shippers in their application."

See, also, Atchison, T. & S. F. R. Co. v. State, 85 Okl. 223, 206 P. 236; Producers' Refining Co. v. Missouri K. & T. Ry. Co. (Tex. Com. App.) 13 S.W.(2d) 680.

This court has passed upon the question involved, in the case of El Paso & Southwestern Railway Company et al. v. Arizona Corporation Commission et al., in which a similar order of the Arizona Corporation Commission was attacked. It was there held no written opinion having been filed, that the order of the Commission was null, void, and of no effect, and a permanent injunction issued against the enforcement of the order.

We find no reason to depart from the ruling made in that case.

■ We are convinced that when the Arizona Corporation Commission has approved and authorized a rate to be collected, and the carrier has collected that rate and nothing in excess thereof. while the rate was in force, the Commission has no authority to order a reparation, even though it should thereafter find, as it did in this case, that the rate so prescribed was excessive. The same rule applies to rates fixed by the Interstate Commerce Commission, Atchison, T. & S. F. Ry. Co. v. Arizona Grocery Co. (C. C. A.) 49 F.(2d) 563.

There remains to be considered the second ground of the motion, "That the court has no jurisdiction of the subject-matter of this suit."

■ The jurisdiction of this court is invoked upon the constitutional grounds that the laws of Arizona in question deny to complainant equal protection of the laws, and their enforcement will deprive it of its property without due process of law. It is not necessary to prolong this opinion by setting forth at length all of the constitutional and statutory provisions of Arizona bearing upon the subject, as the résumé thereof contained in complainant's brief is quite sufficient to disclose the effect of their enforcement against a carrier situated like complainant in this suit.

It appears therefrom and from the bill of complaint herein that under subdivision (b) of paragraph 2347 of the Revised Statutes of Arizona 1913 (Civ. Code), the defendant Apache Powder Company has the right at any time to bring suit to recover the reparations and award; that in such suit and in accordance with paragraph 2341 of said Code, the validity of the order awarding reparations would be conclusive; that under section 17 of article 15 of the State Constitution and paragraphs 2343 and 2344 of said Code, the order would remain in force pending the court's decision, and the court could not enter a decree enjoining, restraining, suspending, or delaying the order; that under section 16 of article 15 of the State Constitution and paragraph 2352 of said Code, a penalty of not less than $100 nor more than $5,000 could be imposed upon complainant for disobeying the order of reparation, and that

each day's continuance of such disobedience would constitute a separate and distinct offense; that under paragraphs 2353 and 2355 of said Code every officer, agent, or employee of said complainant who takes part, aids, or abets in the violation of such order would be guilty of a misdemeanor and could be prosecuted therefor on the complaint of any citizen and upon conviction fined in an amount not exceeding $1,000 or imprisoned for a term not exceeding one year, or both; that under paragraph 2357 of said Code, complainant or any of its officers, agents, or employees disobeying said order would be in contempt of the State Corporation Commission and could be fined therefor in a sum not less than $100 nor more than $5,000; that the enforcement of any of said remedies or penalties would not be a bar against the enforcement of any other remedy, but would be cumulative and in addition to all other remedies; and that under paragraph 2349 of said Code punitive damages could be awarded defendant Apache Powder Company for complainant's refusal or failure to pay the reparations awarded.

This question has been decided by this court at least three times adversely to defendants' contention. In the case of Bonbright v. Geary (D. C.) 210 F. 44, 46, the complainant, as in this case, rested his claim of jurisdiction upon the allegations that in no other way could his rights be adjudicated in a court of law; that the pains and penalties of the Arizona statute are so severe and cumulative in effect that he could not test the validity of the order of the Corporation Commission without the danger of being subjected to irreparable damage and excessive fines and penalties, and the court, speaking through Judge Morrow, said: "These allegations of the complaint and the provisions of the Arizona statute to which reference is made appear to bring this case within the decision of the Supreme Court of the United States in Ex parte Young, 209 U. S. 123–144, 148, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764."

In the case of Van Dyke v. Geary, 218 F. 111, 116, in which the jurisdiction of this court was invoked on the same grounds as in the Bonbright Case, the court, speaking through Judge Sawtelle, after quoting from Judge Morrow's decision in the Bonbright Case, said: "We think it unnecessary to go into a lengthy discussion of this question.

We hold that this court has jurisdiction of this cause, because it involves the decision of a federal question arising under the Constitution of the United States."

The same ruling was made in the case of El Paso & S. W. Ry. Co. v. Arizona Corporation Commission, supra.

The defendant contends that this court is without jurisdiction, for the reason that this is not a suit between citizens of different states, and that there is no substantial federal question involved; that the question of whether or not the Arizona Corporation Commission had power under the state law to make the reparation order is purely a local or state question.

In this case, the plaintiff alleges that the act in question was in violation of the Federal Constitution (Amendment 14) because of the enormous fines and penalties provided as punishment for a violation of any of its provisions, and, as Judge Sawtelle said, in the case of Van Dyke v. Geary, supra, this involves the decision of a federal question arising under the Constitution of the United States and the federal court has jurisdiction.

As stated by Mr. Justice Peckham, in the case of Siler v. Louisville & Nashville R. Co., 213 U. S. 191, 29 S. Ct. 451, 454, 53 L. Ed. 753, "The Federal questions as to the invalidity of the state statute because, as alleged, it was in violation of the Federal Constitution, gave the circuit court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only."

There are other questions raised by both parties, but we deem them of no importance, in face of the foregoing. There is no merit in the motion to dismiss and the same is denied.

As the whole case is submitted to the court for final decision upon the agreed statement of facts, and from the facts and the law it appears that the court has jurisdiction and that a good cause in equity is stated, it follows that the complainant is entitled to the decree of this court permanently enjoining the enforcement of the order of the Corporation Commission, as prayed in the bill, with costs. It is so ordered.