I was not in favor of granting the writ in this case, but on the merits I think the judgment is correct.

O'NIELL, C. J., is of the opinion that, although the exception of no cause of action presents a serious question, which might come up on appeal, the civil district court for the parish of Orleans has jurisdiction in this case because the defendant had established a residence and domicile in New Orleans before the plaintiff brought her suit; and in that respect this case is unlike the Mathews Case, the Evans Case, and the Mann Case, in each of which cases the defendant had never resided in Louisiana, and in fact had never been in this state.

LAND, J., recused.

160 So. 634

**MORRISON CAFETERIA OF LOUISIANA, Inc., v. LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 33081.

March 4, 1935.

Rehearing Denied April 1, 1935.

C. F. Currier and W. M. Phillips, both of Shreveport, for appellant.

W. M. Barrow, of Baton Rouge, and C. Huffman Lewis, W. Scott Wilkinson, and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellee Southwestern Gas & Electric Company.

BRUNOT, Justice.

The plaintiff is one of a chain of cafeterias. It is located and doing business in the city of Shreveport, La. It filed a petition with the Louisiana Public Service Commission, in which it seeks to recover from the Southwestern Gas & Electric Company a refund of certain alleged overcharges for electric current furnished by that company to the plaintiff between May 1, 1929, and May 1, 1932.

The Southwestern Gas & Electric Company was cited to show cause why the relief prayed for by the petitioner should not be granted. The defendant did not answer the petition, but it filed, in the following order, a plea to the jurisdiction of the commission, exceptions of no right and no cause of action, and a plea of prescription. The commission overruled the plea to the jurisdiction of the commission, it referred the exceptions to the merits, but it maintained the plea of prescription and dismissed the proceeding. Thereupon the plaintiff filed this suit, which is, in effect, an appeal from the order of the commission. The case was heard in the district court, and from a judgment of that court overruling the commission's order maintaining the defendant's plea of prescription, but maintaining the defendant's exceptions of no right and no cause of action, and dismissing the suit at plaintiff's cost, the plaintiff appealed to this court.

The learned trial judge had before him two cases in which the same issues were involved. These cases were consolidated for trial, and the written reasons handed down by the judge include and apply to both cases equally. With this preliminary statement, we quote, with approval, from the judge's reasons, the following:

"An examination of the proceedings had before the Commission shows that in sustaining the pleas of prescription and rejecting the demands of the plaintiffs, the Commission followed the provisions of section 3 of Act No. 175 of 1912. This statute was adopted under the Constitution of 1898 and under the Articles 283, 284, 285, 286 and 288 of which the Railroad Commission had jurisdiction only over railroads, express, telephone, telegraph, steamboat and other water craft, and sleeping car companies. And Act 175 of 1912 merely supplemented those articles of the then Constitution. See Texas & Pacific Railway Co. v. Railroad Commission of Louisiana, 137 La. 1059, 69 So. 837. The first clause of the title of that act authorized and empowered the Railroad Commission to 'determine and award to shippers or consignees, money damages arising from violation of rates, classifications, rules, regulations or orders adopted by the Commission.' It is true that this statute was continued in effect by section 9 of article 6 of the Constitution of 1921, but necessarily within and subject to its purposes and

limitations. The use of the words 'shippers or consignees' in the title, together with various provisions of the act clearly indicated an intention to deal only with overcharges made by railroads and other common carriers. In no event, however, could the Legislature have contemplated overcharges made by public utilities not then under the supervision and control of the Railroad Commission, though later made subject to the supervision of the Louisiana Public Service Commission, its successor by the Constitution of 1921. The character of business conducted by the Southwestern Gas & Electric Company being that of a public utility, engaged in furnishing electricity for power and lighting purposes, it is therefore obvious that Act 175 of 1912 has no application to the demands of the plaintiffs for refunds for overcharges on electric current furnished by said company. Accordingly, the action of the Commission in dismissing the demands of the plaintiffs on pleas of prescription, based upon the provisions of Section 3 of Act 175 of 1912, was erroneous. * * *

"The demands of the plaintiffs before the Commission having been restricted to judgments, in money sums, as shown by the prayer of each petition filed there, and in the absence of a statute conferring such power in cases involving electric service, it becomes necessary to determine if the Commission possesses this authority under the provisions of the Constitution of 1921, creating the Commission and defining its power.

"The power of the Commission over utilities furnishing electricity is defined by section 4 of article 6 of the Constitution, reading in part, as follows:

" 'The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, * * * gas, electric light, heat and power, water works, common carrier pipe lines, * * * and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls and charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.'

"There then follows a provision reading, in part, as follows:

" 'The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. * * *'

"And, after excluding other provisions not pertinent, there appears in the second paragraph of section 5 of the same article, the following clause:

" 'The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided. * * *'

"Then in section 6 of said article is found the further provision as to penalties, referred to above, as follows:

" 'If any common carrier or public utility now, or which may hereafter be placed, under the control of the Commission, shall violate any of the rates, tolls, fares, or charges, or orders or decisions of the Commission, such common carrier or public utility shall forfeit

and pay to the State a penalty to be fixed by the Commission of not less than one hundred ($100.00) dollars, nor more than five thousand ($5,000.00) dollars, for each violation, to be recovered before any court of competent jurisdiction, at the suit of the State, at the domicile of the Commission.'

"An analysis of these constitutional provisions results in the conclusion that the Commission has the authority to regulate and control all common carriers and certain public utilities, with supervision of the service rendered by them. The Commission likewise has the power to fix reasonable rates to be charged by common carriers and public utilities subject to such control, and to enforce its orders by the imposition of penalties, recoverable by judicial proceedings. There are other provisions in the same constitutional article empowering the Commission to adopt and enforce reasonable regulation and procedure, with the right to summon, compel the attendance of and swear witnesses, to compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts. With these latter constitutional provisions in mind and under discussion, the Supreme Court said in State ex rel. Milling v. Louisiana Public Service Commission, 154 La. 752, 98 So. 175, 180:

" 'Our ruling in this case, that the contempt proceedings of the Public Service Commission are subject to the supervisory jurisdiction of this court, is not to be construed as declaring the Commission a court, in any sense. * * *'

"Again, in River & Rail Terminals, Inc., v. Louisiana Railway & Navigation Co., 171 La. 223, 130 So. 337, 339, the Court held:

" 'The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense of that term.'

"And nowhere, in any of the constitutional provisions quoted or referred to above, is the power lodged in the Commission to render a money judgment or award, clearly a judicial function, in cases of alleged overcharges on the part of common carriers and public utilities. In this connection, it is proper to observe again that even where the Commission imposes a fine under Section 6, above quoted in full, the same may be recovered only at the suit of the State, and before a court of competent jurisdiction. If the power does not reside in the Commission to compel the payment of fines imposed by it, and such fines cannot be recovered except by a suit brought in the name of the State, by what process of reasoning could it be held that the Commission may render a judgment in a sum of money, in the absence of authority, constitutional or otherwise, under which payment therefor may be enforced?

"Analogous to this discussion is what the Court said in Texas & Pacific Railway Co. v. Railroad Commission of Louisiana, 137 La. 1059, 69 So. 837, 840. The Court in that case was considering the powers of the Railroad Commission of Louisiana as they existed at the time of the adoption of Act 175 of 1912, commented upon heretofore in this opinion, and held that under the Constitution then in existence, the Commission did not have the

authority to order the refunding of money on the complaint of a shipper or consignee, and that had the Constitution granted such authority, Act 175 of 1912 would have been unnecessary. And the Court made this further observation:

" 'Nor are we able to see in what way the particular rulings of the United States courts, to which we are referred, relating to the jurisdiction of the Interstate Commerce Commission, can affect the issue presented in this case, since those rulings are predicated upon an act of Congress which confers upon that Commission judicial powers and a certain jurisdiction, concurrent with that of the Circuit and District Courts of the United States; whereas all such power and jurisdiction are withheld from the defendant herein; even its findings under the act of 1912 being inconclusive and reviewable in the courts of ordinary jurisdiction.'

. "Appropriate to a comparison of the provisions of the Constitutions of 1898 and 1913 with that of the present Constitution, under discussion the District Court of the United States in Morgan's Louisiana & Texas Railroad & Steamship Co. v. Louisiana Public Service Commission, 287 F. 390, 392, gave expression to the following language:

" 'There is no appreciable difference in the authority of the two commissions.'

"But in the Standard Oil Co. of Louisiana v. Louisiana Public Service Commission, 154 La. 557, at page 566, 97 So. 859, the Court in a very interesting discussion, points out that in some respects, the provisions of the present Constitution relative to the Commission appear to be much more restricted than those of the Constitution of 1898. Therefore,

in view of the two last cited decisions, it would not do' to say that the present Commission has the constitutional authority, even by implication, to render a money judgment in the face of the ruling in Texas & Pacific Railway Co. v. Railroad Commission of Louisiana, 137 La. 1059, 69 So. 837, supra, that the former Commission did not possess such constitutional power. The case of Shreveport Laundries, Inc., v. Southern Cities Distributing Co., 176 La. 994, 147 So. 56, is not decisive of the issues here, as urged by counsel for plaintiffs. In that case the Court was of the opinion that the basic matter involved presented a question of interpretation that should be answered primarily by the Commission, the jurisdiction of which the plaintiff 'had not sought before applying to the courts. The plaintiffs here, however, are appealing from orders of the Commission dismissing their demands for strictly money judgments. And, as has been pointed out heretofore in this opinion, the plaintiffs did not complain before the Commission as to the rate presently charged them by the Southwestern Gas & Electric Company, but confined their grievance to an alleged overcharge previously made and due, as alleged by plaintiffs, to said Company putting into effect an improper rate. Therefore, if the Company later adopted what appears to be the correct rate, there is involved no question of the interpretation or reasonableness of a rate or rule of the Commission. Thus it was held in Gorham Bros. Co. v. Ann Arbor Railway Co., 228 Mich. 273, 200 N. W. 287, that:

" 'An action to recover a claimed overcharge, where no question of reasonableness of rates is involved, does not involve a merely administrative question, and need not be

submitted to the Commission as a prerequisite to seeking reparation in the courts.'

"See generally C. J. vol. 51, subject head 'Public Utilities,' paragraph 80, footnote 90, and paragraph 94.

"The conclusion having been reached that Act No. 175 of 1912 has no application to overcharges on the part of furnishers of electricity and that the Commission has no constitutional authority to render judgments in favor of consumers in sums of money based upon such overcharges, the Court is powerless to remand these two cases to the Commission for further proceedings, as prayed for."

The quoted reasons assigned by the trial judge and the authorities cited and quoted from therein are sufficiently exhaustive to preclude amplification or further research.

The judgment appealed from is therefore affirmed, at appellant's cost.