[File No. 6513.]

H. W. LYONS, Respondent, v. OTTER TAIL POWER COM-
PANY, a Corporation, Appellant.

(280 N. W. 192.)

404

Opinion filed April 14, 1938.   Rehearing denied June 20, 1938.

*Buck & Buck*, and *Field & Field*, for appellant.
*A. W. Aylmer*, for respondent.

GRIMSON, Dist. J.   In the early summer of 1926 the plaintiff constructed a public garage in the city of Jamestown.   He entered into negotiations with the defendant for the extension of its steam heating mains to this new garage.   This resulted in a written agreement, dated April 3, 1926, whereby the defendant agreed to extend its heating mains to plaintiff's garage not later than August 15, 1926 and plaintiff agreed to pay the defendant, The Otter Tail Power Company $976 towards the cost of said extension.   The defendant is a public utility engaged in furnishing steam heat, electric light and power, etc., and is subject to the jurisdiction of the board of railroad commissioners of the State of North Dakota, as provided by chapter 192, Session Laws, 1919, and statutes amendatory thereof.   This contract, however, was not submitted to said board and was never approved by it.   The defendant proceeded to install the heat mains as provided in the contract, and on August 9, 1926 plaintiff paid defendant $976 in accordance therewith.   The total cost of the installation was $4,101.33.   Of that sum another consumer paid $749.   Defendants stood the balance.

Thereafter steam heat was furnished by the defendant in accordance with the rates and schedules approved by the railroad commission, and payments therefor made by the plaintiff.

On May 6, 1933 the plaintiff filed a written application with the board of railroad commissioners praying for a return of the sum so paid. A hearing was had thereon June 9, 1934 before the board of railroad commissioners, at which hearing the defendant appeared, and testimony was taken. Thereafter, on December 31, 1934 said board filed its findings of fact, conclusions and order, wherein it directed the defendant to refund and pay to the plaintiff the sum of $976 with interest from August 9, 1926 at six per cent. No appeal was taken from that order, neither did the defendant comply therewith. In July 1935, the plaintiff brought this action to enforce that order. Trial to a jury was had in March 1937. Plaintiff offered in evidence the pleadings before the railroad commission, its findings, conclusions and order and rested his case entirely thereon. The defendant objected thereto, offered evidence as to the schedules, rates and regulations of the board and as a further defense attempted to show that plaintiff had not been damaged, claiming that a private heating plant would have cost him more. The jury returned a verdict for the plaintiff and from the judgment entered thereon and from the order denying a motion for judgment notwithstanding or for a new trial, this appeal is taken.

The defendant, both before the railroad commission and in district court, contended that the board of railroad commissioners had no jurisdiction to make such an order for a money award; that the contract, and payment under it, were voluntary and fully executed; that the statute of limitations had run; and that there are no provisions in our public utility laws for the enforcement of a reparation award for money by the railroad commission. The same contentions are made on argument here, and further some errors of law at the trial are claimed.

The order of the board of railroad commissioners is based upon § 4609c44, Comp. Laws Supp. 1925, which reads as follows:

"Improper charges; Reparation. When complaint has been made to the commissioners concerning any rate, fare, toll, rental or charge for any product or commodity furnished or service performed by any

public utility and the commissioners have found after investigation that the public utility has charged an excessive or discriminatory amount for such product, commodity or service, *in excess of the schedules, rates and tariffs on file with the commissioners, or has discriminated under said schedules* against the complainant, the commissioners may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection; provided, no discrimination will result from such reparation."

The evidence in district court showed that at the time this contract was consummated and the payments made the railroad commission had established no rules, regulations, schedules, rates, tariffs or orders applicable to the making of extensions or additions to the steam heating mains and distribution system of the defendant company in Jamestown; neither had any provisions with reference to the payment of the cost or capital investment thereof, or the making of contributions by prospective consumers towards such cost been adopted, nor had that been done at any time before the filing of the complaint. An attempt was made to show that such rules, and schedules had been adopted with regard to electric · light extensions and that the same bases were to be followed with regard to steam main extensions. No rule or regulation, however, had been adopted by the board to that effect. The parties in the absence of such rules and regulations proceeded to make their own contract by which the plaintiff obtained heating service for his garage building, and in order to induce the defendant to extend its mains so as to make such service possible, he agreed to pay a portion of the cost. The contract was fully performed on both sides.

The board of railroad commissioners possesses only the authority conferred upon it by the constitution and the statutes of the state. All orders made by it must conform with the statutes to be valid. The public utility statute, chapter 192, Session Laws, 1919, and statutes amendatory thereof (Supplement 1925, §§ 4609c1–4609c56) are replete with provisions for hearings upon notice. (See § 4609c5.) Before a schedule can be adopted the interested parties must have had a hearing upon notice. State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 378; State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292; Chrysler Light & P. Co. v. Belfield, 58

N. D. 33, 224 N. W. 871, 63 A.L.R. 1337; State ex rel. Lemke v. Union Light, Heat & P. Co. 47 N. D. 402, 182 N. W. 539.

Since no rule had been adopted applying the regulation for electric light extensions to steam extensions the board had no authority for such action. To allow the commission to do that without a hearing would be to allow practices condemned in State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 378, supra. There may be a great difference in what should be required in connection with steam extensions from what may be required for electric extensions. The nature of the business is different. The consumers of steam heat are probably much less numerous. The cost of construction of an extension for steam heating may be a capital expenditure which, if forced upon the utility and included in the rate base, would be unjust to the other consumers. These are things which might properly be taken into consideration by the board in establishing rules pertaining to steam heat extensions, but in the absence of such rules the board had no jurisdiction to determine retroactively upon what conditions an extension should have been made eleven years ago, when that extension has been made pursuant to a contract between the parties entered into and performed in the absence of rules and regulations.

Before the board could order reparation there would have to be established regular schedules, rates and tariffs for the service in question. The reparation order could only be made for such charges as the utility made in excess thereof. Since that was not done in this case the board of railroad commissioners had no jurisdiction to make any reparation award for the return of money voluntarily paid by plaintiff.

A similar matter was before the Supreme Court of Louisiana in the case of Parker Gravel Co. v. Louisiana Pub. Serv. Commission, 182 La. 524, 162 So. 64. The plaintiff operated a sand and gravel pit at Watt's Station, on the line of the Yazoo & Mississippi Railroad Company, and in a little less than three years shipped over said railroad more than 11,000 cars of sand and gravel. The railroad company provided no terminal or switching facilities. The plaintiff built those and performed switching services without compensation from the railroad company. It then filed a complaint with the Public Service Commission setting out these facts, claiming the switching charges

were included in the freight rates and asking for a reparation award of $4.05 per car. The provisions of the Louisiana act allowing reparations authorized the commission to award shippers "money damages arising from violation of rates, classifications, rules, regulations or orders adopted by the commission." No such rates, rules or regulations had been established by the railroad commission regarding switching of cars at Watt's Station. The Court held: "It is therefore clear that the commission has no jurisdiction . . . to entertain plaintiff's demand for a money award, and, having no jurisdiction to entertain the demand, it could enter no valid order in connection therewith."

The respondent contends that the authority over this matter of extensions of steam mains as well as rates and schedules for the service performed is within the powers and duties of the railroad commission and that therefore this matter is within the jurisdiction of the board. It is true that such general supervision is within the powers of the board, but before a money award may be made rules and regulations upon which it is based have to be established. Regulation of utilities is within the legislative and administrative powers of the board and looks rather toward the future. The awarding of reparations must be based upon rules and regulations established in the past. Morrison Cafeteria v. Louisiana Pub. Serv. Commission, 181 La. 932, 160 So. 634.

Respondent contends that this is a collateral attack on the order of the board. Even if the order is given the status of a judgment and even if this proceeding to enforce it is collateral, that it is void for want of jurisdiction may always be shown. 34 C. J. 523.

The order of the board to compel the defendant to make a money reparation in a matter upon which it had not theretofore established rules, regulations and schedules, was beyond its jurisdiction.

The question herein decided is determinative of the controversy and it becomes unnecessary to consider the other errors assigned.

Reversed and dismissed.

CHRISTIANSON, Ch. J., and MORRIS, BURR and NUESSLE, JJ., concur.

SATHRE, J., being disqualified, did not participate, Hon. G. GRIM-SON, Judge of Second Judicial District, sitting in his stead.

GRIMSON, Dist. J. (On Petition for Rehearing). The respondent has filed a well considered petition for rehearing. That petition, however, is based upon the theory that this proceeding was brought on the basis that an excessive charge had been made by the defendant and appellant in connection with the heat furnished after the installation was made; that the $976.00 was a part of the charge for the steam heat supplied the plaintiff and in excess of the rates prescribed by the railroad commission therefor. A careful reconsideration of the pleadings and the evidence shows that the respondent is mistaken in this theory. The contract entered into distinctly states "that the payment of Nine Hundred Seventy-six Dollars ($976.00) is for the purpose of *obtaining* service." That cannot be construed as a charge for the service afterwards furnished. The matter of constructing an extension of steam mains is entirely different from the furnishing of the steam heat after the extension has been constructed. Clearly the contract shows that the payment was not made for service (heat furnished), but for the purpose of extending the mains so that service (steam heat) might be obtained.

The evidence clearly shows that no rules, regulations, or schedules had at that time been established by the railroad commission governing the matter of steam heat extensions. The most that the finding of the board of railroad commissioners in this case indicates, is that a custom may have existed with regard to the requirements in the matter of extensions in other utilities. That is not a rule upon which to base an order of reparation under § 4609c44, 1925 Supplement to Compiled Laws.

The validity of the contract is not involved and we need not pass upon it. This whole proceeding is brought for a refund of a charge that was made for *"obtaining service"* not for furnishing heat service after the installation of an extension. The schedules for furnishing steam heat are not involved. For obtaining this service, i. e., the extension of the mains, no rules or schedules had been established.

Under those circumstances the board of railroad commissioners had no jurisdiction to order reparation.

The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and MORRIS, BURR and NUESSLE, JJ., concur.