## The Southwestern Railroad *vs.* Wright, Comptroller General, *et al.*

[Jackson, Chief Justice, being disqualified, Judge Underwood, of the Rome circuit, was appointed to preside in his place. This case was argued at the last term, and the decision reserved.]

1. Where any ministerial officer of this state is attempting to collect money out of a person, natural or artificial, under the forms of law, but without any valid law to authorize the process he uses and calls an execution for taxes, it is the duty of the courts, in a proper case made, to arrest the proceeding in some of the modes known to the law, and afford relief to the party justly complaining.

2. Equity has jurisdiction to interfere in behalf of any person, natural or artificial, entitled to relief on the following grounds : (1.) Where exactions are pressed in the form of annual taxes, inconsistent with, and violative of, legal rights. (2.) Because the exactions might be repeated and wrongs multiplied. (3.) When misled by the act of

the officer, which amounts to a legal fraud. (4.) On the ground of mistake. (5.) Because the numerous questions made as to different parts of the property assessed, and the liability of each portion dependent for adjudication on separate charters and amendments and other questions in respect to other items of property in and out of this state, and in what degree or how connected, and whether liable or not to be taxed, make a complicated case that properly calls for the exercise of the powers of a court of equity to ascertain, adjust and settle.

3. Tax executions having been issued against the railroad and levied upon property in Bibb county, the principal office of the company being in that county, the superior court thereof has jurisdiction to enjoin the collection of the *fi. fas.* The case is not altered by the lease to another company.

4. Under the facts of the case, it is apparent that the collection of tax upon the entire property of the railroad, without regard to the limitations of the charter, would be unconstitutional and illegal.

5. That portion of the new Southwestern railroad, known as the former Muscogee railroad, from Columbus to Butler, is not liable to be taxed beyond the limitation fixed in the charter, it being covered by the decision of the supreme court of the United States. 92 U. S. 665. The road from Fort Valley to Butler is not liable to be taxed further than provided in the charter, because the words authorizing the extension to Butler or Wolf Pen, as then called, exonerate the extension from further taxation—or taxation "of one-half of one per cent. on the net annual income."

The main line of road from Macon to Fort Gaines is exempt from taxation, except as limited in the charter.

The line from Cuthbert to Eufaula is subject to the *ad valorem* tax, less the amount already paid.

The line from Albany to Arlington is liable to the *ad valorem* tax, deducting the income tax paid, it being made expressly liable for "such additional tax as the legislature may hereafter impose." We think the act of 1874 imposed the *ad valorem* tax.

6. If there is any other question in this case not mentioned, it is fully covered by the decision in this very case, in 64 *Ga.*, 783, and that decision is in all things affirmed, and must control this case.

7. A decision made in a particular case must control the case. The principle might be reviewed in another case and reversed.

Equity. Taxes. Railroads. Southwestern Railroad. Judgments. *Res Adjudicata.* Before Judge SIMMONS. Bibb Superior Court. April Term, 1881.

To the report contained in the decision it is unnecessary to add any thing further than to refer to the same case reported in 64 *Ga.*, 783, where it is fully set forth.

A. R. LAWTON ; LYON & GRESHAM, for plaintiff in error.

CLIFFORD ANDERSON, attorney general; ROBERT TOOMBS, for defendants.

UNDERWOOD, Judge.

This case comes before the court a second time. The principles involved are of very great importance to the parties litigant. Exceedingly complex questions and great interests are involved, both to the state and the corporation. The decision in this particular case will control in all similar cases. It is due to the state and the corporation and other parties, that a rest should exist in reference to the right and exceptions claimed. We have given the case such consideration as the time allowed us will permit, and the result aimed at will be announced as concisely and as clearly as has been attainable.

The plaintiff in error filed a bill on the equity side of the court of the county of Bibb, claiming relief from the payment of two executions issued by the Comptroller-General of Georgia *vs.* The Southwestern Railroad Company for taxes claimed by the state, alleged to be due and unpaid,—taxes alleged to be assessed upon the property of defendant its road and branches. The bill prayed for an injunction. The defendant answered the bill. The chancellor granted the injunction prayed for, and the defendant excepted. The decision of the court below was affirmed with instructions. The case is reported in 64 *Ga.*, 783.

After that decision, the case proceeded in the superior court of the county of Bibb. An auditor was appointed. He heard the case and made a report, to which exceptions

were filed by both parties. The case was tried under the instructions upon the exceptions filed to the auditor's report, and the written and verbal proofs. A verdict was rendered. Complainants moved for a new trial, insisting upon twelve grounds. New trial refused, and complainants excepted and assigned error upon each ground in the motion.

1. The first ground for new trial was as follows · "That the verdict of the jury finding the value of the branch railroad from Americus to Albany for the years 1876 and 1877, respectively, to be $693,500 00 was contrary to the evidence, without evidence, and it was also against the law."

There was evidence in the record that would authorize the jury to find that amount. It was in proof that this part of the road, this branch, was of average value, relatively considered with reference to the value of the whole line of road. It was competent to prove the value of the whole line; to prove the amount of business done on this section and on the whole line, the value of the stock, the productions, population, and resources. These facts, if in evidence, may each and all or any of them be considered by a jury in order to ascertain the market value of the road. This part of the verdict was not against law. We think that by the express language used in the amendatory act of December 19th, 1859, by which the railroad known as the Georgia and Florida Railroad, was consolidated with the Southwestern Railroad Company, it then being completed from Albany to Americus, to-wit: "That the said railroad from Americus to Albany shall be considered part and parcel of the road of the Southwestern Railroad Company, and be liable to pay to the state the same tax that the rest of the Southwestern Railroad Company is liable to pay, and such additional tax as the legislature may hereafter impose," that branch is placed under the same burthen of taxation as the citizens of the state, who were owners of property after the pas-

sage of the tax act of 1874—the *ad valorem* tax—less any amount of tax paid on that branch prior to the issuing of the *fi. fa.* See acts of 1874, p. 107, sections 1, 2. Such was the decision of the supreme court in this very case. 64 *Ga.*, 798.

2. The second ground for new trial is, "Because the verdict of the jury finding that part of the railroad from the junction at or near Cuthbert to Eufaula, Alabama, to be of the value of $427,500.00 for the years 1876 and 1877, respectively, and taxable at that sum for each of those years, was without evidence, against evidence, and also against law."

There was proof as to the value of this part of the road that would authorize the finding of the jury, and the verdict was not against law.

We think the words used in the amended act by which this branch was built, to-wit: "Under the same rules and restrictions as they are now authorized to construct said Southwestern Railroad," are not sufficient to exempt that part of the road from Cuthbert to Eufaula from the provisions of the act of 1874—the *ad valorem* tax; and therefore that branch is liable to the *ad valorem* tax imposed by law upon the property of the people of this state.

3. The third ground for new trial is, "Because the court erred in overruling the third exception of complainant to the auditor's report, and holding that under the law that part of complainant's road and the property thereof from Americus to Albany was not entitled to the charter exemption of any greater tax on said road and its property than one-half of one per cent. on its net annual income." The words used in the amendment "the same rules and restrictions" do not make the exemption claimed, and we find no error in this ruling and decision.

4. The fourth ground in the motion is, "Because the court erred in overruling the first exception to the auditor's report, and in ruling thereon that that part of complainant's road from Cuthbert to Eufaula was not entitled

v 68—22

to the charter exemption of any higher tax on the same, on the said property thereof, than one-half of one per cent. on the net annual income." For the reasons already given there was no error in this decision.

5. " Because the court erred in overruling the second exception to the auditor's report, and in holding that the branch road of complainant, from Albany to Arlington, was not entitled to a charter exemption of no greater tax than one-half of one per cent. on its net annual income, and in ruling that it was liable to pay a tax on all its property as the property of the balance of the people of this state."

We think that the section from Albany to Arlington is liable to the *ad valorem* tax, it being expressly " liable for such additional tax as the legislature may impose." The act of 1874, before cited, imposes it.

6. " Because the court erred in overruling the fifth exception to the auditor's report, and in not holding under the law that said tax execution, the assessment of taxes, returns of property and levy of taxes of the same that formed the subject matter of complainant's bill, were illegal, null and void, and issued not only without authority of law but against the law."

It is contended that, inasmuch as a return had been made to the comptroller general of the income tax upon the whole line of the Southwestern Railroad Company, including the branch roads, that the comptroller general had no authority to issue an execution without notice and arbitration. Under the view which we take of the law, the income tax was not the tax to which these branch roads were subject, but to an *ad valorem* tax, and the law of the Code relied on applies only to cases of under-valuation. If the *ad valorem* tax was due and owing by the law, and the company made no return of the value, the company was a delinquent tax-payer, and there was authority of law to issue the *fi. fa.*

It is also contended that the *fi. fas.* are illegal because

issued by an illegal order. If it was the duty of the comptroller general to issue the *fi. fas.*, no order was necessary. If he refused to do his duty, the executive could compel it. If he failed to do his duty, it was proper to remind him of it by an order. But, be that as it may, it is wholly immaterial; if the property was subject to taxation, and the return of the property *ad valorem* was not made as the law requires, and the taxes. paid, it was the plain duty of the comptroller general to issue the *fi. fas.* and collect the tax, and whether he proceeded with or without. order makes no difference.

When this case was before the court in 64 *Ga.*, this very question was involved; and sustaining the injunction and holding the case in court for a trial, decided the validity of the executions.

7. Because the court erred in the charge.to the jury in respect to that part of complainant's road from Cuthbert to Eufaula, as follows: " That road or branch is subject to pay taxes on all its property, just as individuals pay on their property." In other words, it has no exemption. We find no error in this. It was a question of law, and correctly decided, and in accordance with the decision of this court in this case. 64 *Ga.*, 783.

8. Because the court erred: "In charging the jury on the same subject stated in the 7th ground hereof, as follows: 'I am not sure it is my province to give you a rule in estimating these values (that of the Cuthbert and Eufaula branch and other branches). It is for the jury, at last, to estimate and value this property, and in considering the value of it, you may take into consideration all the testimony in the case. If there is any evidence going to show what the whole road is worth, or the average per mile, then you may consider if it would be proper to include this branch from Cuthbert to Eufaula in an average of the whole road, or whether in the average you consider only the main track; that is a question I leave you to consider, under all the testimony submitted to you. And I

leave you to consider whether, in determining the value of these branches, you take the whole length of the roads, 307 miles (if that is the length of the whole road), or leave out the branches and consider 257 miles, if that is the correct number. The real question is, what was the real value, the market value of these roads for the years specified, and according to their true value, and as you find, allow or disallow the exception."

There was no error in this part of the charge as against the railroad company, relative to one criterion of the value. The legislature of Georgia, in 1873, expressed their opinion with reference to the valuation of parts of a railway running in this state that has no terminus in Georgia. See acts of of 1873, page 64. This charge seems to be very carefully guarded, and was as favorable to the railroad company as they reasonably ought to have expected.

9. The ninth ground for new trial stands upon a like footing with the eighth, and is disposed of in like manner.

10. Because the court erred in charging the jury as follows: "There is an intimation by the supreme court, when this case was before them, as to a proper mode of valuing this road. I will not restrict you to that; if the testimony shows a better way to value it, the jury are at liberty to adopt it. If it is shown to you by proper testimony that it is the best way to value it, the jury are at liberty to take the best way in valuing any part of the property."

In estimating the value of a railway, any evidence that will aid the jury in arriving at the true market value is free from objection, and is of course entitled to consideration by the jury. Nothing said in the charge restricted the jury or confined their minds to the consideration of any single piece of evidence as to value. There are many elements of value that may be proved and considered by the jury, viz: The cost of the road and equipments ; the value of the stock, the business of the line ; the produc-

tions of the country through which it runs ; the cities, towns, villages and population, and many other things; the proportion that the length taxed bears to the whole length of the road.

11. There was no error in the charge of the court complained of in the 11th ground for new trial.

12. Because the court erred in admitting in evidence the testimony of Virgil Powers as to the value of the stock of the Southwestern Railroad Company.

We think the evidence was properly admitted.

One of the questions argued before this court is this : " That the comptroller-general received the returns, assessed the tax, collected the tax assessed, and then issued the executions without notice."

This question is not free from difficulty at first view. In considering it, let it be borne in mind that this case is in a court of equity. The state has been invited or forced into this court by the railroad company. If this court is right now—if the decision of the court delivered by Justice Jackson referred to, in 64 *Ga.*, made while the late lamented Chief Justice Warner was on the bench, in this very case, is right, the railway company made the first illegal and erroneous movement when it made the return of taxes for the whole line of its road, including branches, at one-half of one per cent. on the "net annual income."

It will be noticed that by the rulings of this court in 64 *Ga.*, only the line from Macon to Fort Gaines was entitled to this exemption, to this rate of taxation, " one-half of one per cent upon the net annual income thereof."

The branches, for the reasons given in 64 *Ga.*, were and are subject to the *ad valorem* tax as other citizens who are owners of property.

The next erroneous movement was made by the comptroller general when executions were issued for an *ad valorem* tax on the "whole line of the road from Macon, including the branches." By the decision of the supreme court of the United States, Vol. 92, the line from Macon

to Fort Gaines was exempt from taxation, except one-half of one per cent. on the net annual income. This court in this case has decided that the branches of the company are subject to the *ad valorem* tax as other tax payers.

The following principles are enunciated:

1. Where any ministerial officer of this state is attempting to collect money out of a person, natural or artificial, under the forms of law, but without any valid law to authorize the process he uses and calls an execution for taxes, it is the duty of the courts in a proper case made, to arrest the proceeding in some of the modes known to the law and afford relief to the party justly complaining.

2. Equity has jurisdiction to interfere in behalf of any person, natural or artificial, entitled to relief, on the following grounds: (1.) Where exactions are pressed in the form of annual taxes, inconsistent with and violative of legal rights. (2.) Because the exactions might be repeated and wrongs multiplied. (3.) When misled by the act of the officer which amounts to a legal fraud. (4.) On the ground of mistake. (5.) Because the numerous questions made as to different parts of the property assessed, and the liability of each portion, dependent for adjudication on separate charters and amendments, and other questions in respect to other items of property in and out of this state, and in what degree or how connected, and whether liable or not to be taxed, make a complicated case, that properly calls for the exercise of the powers of a court of equity to ascertain, adjust and settle.

3. Tax executions having been issued against the railroad and levied upon property in Bibb county, the principal office of the company being in that county, the superior court thereof has jurisdiction to enjoin the collection of the *fi. fas.*

The case is not altered by the lease to another company.

4. Under the facts of this case, it is apparent that the collection of tax upon the entire property of the railroad

without regard to the limitations of charter, would be unconstitutional and illegal.

5. That portion of the new Southwestern Railroad, known as the former Muscogee Railroad, from Columbus to Butler, is not liable to be taxed beyond the limitation fixed in the charter, it being covered by the decision of the supreme court of the United States. 92 U. S., 665. . The road from Fort Valley to Butler is not liable to be taxed further than provided in the charter, because the words authorizing the extension to Butler, or Wolf Pen, as then called, exhonorate the extension from further taxation, or taxation "of one-half of one per cent on the net annual income."

The main line of road from Macon to Fort Gaines is exempt from taxation except as limited in the charter.

The line from Cuthbert to Eufaula is subject to the *ad valorem* tax, less the amount already paid.

The line from Albany to Arlington is liable to the *ad valorem* tax, deducting the income tax, it being expressly liable for "such additional tax as the legistature may hereafter impose." We think the act of 1874 imposed the *ad valorem* tax.

6. If there is any other question in this case not mentioned, it is fully covered by the decision in this very case in 64 *Ga.*, 783; and that decision is in all things affirmed, and must control this case.

7. A decision made in a particular case must control the case. The principle might be reviewed in another case and reversed.

This opinion has been written on the circuit amid many perplexities and very many interruptions, and may have much imperfection.

We make the following judgment: It is considered, ordered and adjudged, that the decision of the court below be in all things affirmed.