DENVER & R. G. R. CO. et al., v. PUBLIC
UTILITIES COMMISSION OF UTAH

No. 4570.   Decided July 13, 1928.   (272 P. 939.)
Rehearing Denied December 19, 1928.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for
plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal Farr,* Asst. Atty.
Gen., for defendant.

CHERRY, J.

The Public Utilities Commission, after a hearing, ordered the plaintiffs to pay to the state of Utah $3,099.14 as reparation for alleged discriminatory freight charges exacted by plaintiffs on the shipment of 338 carloads of sand and gravel from Mount, in Salt Lake county, Utah, to various points of destination in Carbon county, Utah. The case is here by writ of review at the suit of the plaintiffs, who contend that the commission was without power or jurisdiction to make the order.

The relevant facts, of which there is no dispute, are: Mount is a station in Salt Lake County, on the Los Angeles & Salt Lake Railroad. The points of destination to which the shipments in question were made are situated in Carbon county, on the line of the Denver & Rio Grande Western Railroad. The situation was such that the shipments were required to move from Mount over the Los Angeles & Salt Lake Railroad to Provo, Utah, and from thence to the points of destination over the Denver & Rio Grande Western Railroad. At the time of the shipments there was a duly published and approved rate on file with the commission of $1.56½ per ton for sand and gravel, between the points in question, over the two lines of railroad referred to. During the latter part of the year 1922, the state road commission shipped over the route above indicated 338 carloads of sand and gravel from Mount to the several points in Carbon county where it was constructing a public highway, for all of which a rate of $1.56½ per ton was charged and paid.

Sandspur is a station on the Denver & Rio Grande Western Railroad in Salt Lake county, which is further distant from points in Carbon county by rail than is Mount. At the time in question there was a rate in force on sand and gravel over the Denver & Rio Grande Western Railroad, from Sandspur to points in Carbon county, of $1.41 per ton. There was also in force at the time, from Mount to certain points in Carbon county, over the Los Angeles & Salt Lake Railroad

and the Utah Railway, a rate of $1.41 per ton. Over this route, however, but one of the three points of destination to which the shipments in question were made could be reached.

From this situation the commission found that the rate of $1.56½ charged for the shipments in question was excessive and in violation of law to the extent of 15½ cents per ton, because contemporaneously other shipments from other points under similar conditions were being accorded a rate of $1.41 per ton for the same commodity, and, upon a finding of damages, ordered reparation to be paid by the carriers to the shipper accordingly.

The power of the commission to order reparation is statutory, and cannot be extended beyond the legislative grant. The power asserted is defined and limited by Compiled Laws Utah 1917, § 4838, as follows:

"1. When complaint has been made to the commission concerning any rate, fare, toll, rental, or charge for any product or commodity furnished or service performed by any public utility, and the commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount for such product, commodity, or service in excess of the schedules, rates, and tariffs on file with the commission, or has discriminated under said schedules against the complainant, the commission may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection: Provided no discrimination will result from such reparation."

We think it plain from the language of the statute that the power of the commission to order reparations is limited to cases where charges have been made in excess of the schedules, rates, and tariffs on file with the commission, or discriminations made under such schedules. That was the view taken by the commission itself, and approved by this court, in *Utah-Idaho Cent. R. Co.* v. *Public Utilities Com-*

*mission,* 64 Utah 54, 227 P. 1025. See, also, *Texas & P. R. Co.* v. *Railroad Commission,* 137 La. 1059, 69 So. 837.

In the present case it appears positively that the rate charged was the regular established and approved rate on file with the commission. It was not contended that any other rate was open to other shippers over the lines on which, and between the points from and to which, the shipments in question were made. It was only made to appear that the same commodity could be transported between other points, and on other lines, under similar conditions, for a less rate. This, we think, affords no proper grounds, under the statute, for ordering reparations. The rate charged and paid was the only rate which, under the schedules on file with the commission, could properly be applied to the shipments in question.

The policy of the statute, as its language plainly imports, is to require a rigid observance of established schedules and rates, and to authorize reparations only when there has been a discrimination thereunder or a departure therefrom.

It follows that the order complained of was in excess of the authority of the commission, and the same must be, and is, annulled.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.