GEORGIA PUBLIC SERVICE COMMISSION *et al.* v.
ATLANTA GAS LIGHT COMPANY.

864

No. 16732. September 16, 1949.   Rehearing denied October 13, 1949.

*Eugene Cook, Attorney-General, R. L. Addleton, Assistant Attorney-General,* and *Charles J. Bloch,* for plaintiff in error.

*Moise, Post & Gardner,* contra.

ALMAND, Justice. (After stating the foregoing facts.) Counsel for the defendants in error in their brief say that the questions presented by the demurrer, by the exceptions concerning the evidence, and by the exceptions to the grant of the interlocutory injunction, are as follows: 1. Is this a suit against the State? 2. Did the plaintiff have an adequate remedy at law? 3. Are the orders of December 11 and 22, 1948, unconstitutional? 4. Did the Georgia Public Service Commission have statutory authority to adjust rates as it did in the situation here presented in the orders attacked? Under the view we take of the four questions stated, it will only be necessary to decide those presented under numbers 1, 2, and 4, and we will. deal with them in that order, in divisions 1, 2, and 3 respectively of the opinion.

■ "Any suit against an officer or agent of the State, in his official capacity, in which a judgment can be rendered controlling the action or property of the State in a manner not prescribed by statute, is a suit against the State" (*Roberts* v. *Barwick,* 187 *Ga.* 691, 1 S. E. 2d, 713), and cannot be brought without its consent.

In determining whether the action is one against the State where the suit is against an agency or officer of the State, the nature of the suit or relief prayed must be considered, and not merely the position or character of the agency or officer against whom the action is brought. The question is, does the action

affect a contract or property right of the State, so that a judgment against the State agency or officer will bind the State or control future State action? The State's interest must be of such substantial nature that the result of the action affects it as a sovereign entity.

It is contended that, under the Constitution of 1945, art. 4, sec. 1, par. 1, and art. 4, sec. 4, par. 3, the Public Service Commission is a State agency and its members are constitutional officers, and therefore a suit against the commission and its members in their official capacity is a suit against the State. In substance, art. 4, sec. 1, par. 1 of the Constitution of 1945 contains the same provisions that are in art. 4, sec. 2, par. 1 of the Constitution of 1877 as amended, which paragraph confers power and authority upon the General Assembly to pass laws prohibiting unjust discrimination by public utilities, and to enforce the same by adequate penalties.

Paragraph 3, sec. 4, art. 4 of the Constitution of 1945 first appeared as an amendment to the Constitution of 1877, which was ratified August 3, 1943. Ga. L. 1943, p. 37; Code, Ann., § 2-2508. It provides that there shall be a Public Service Commission "for the regulation of utilities, vested with the jurisdiction, powers and duties now provided by law or that may hereafter be prescribed by the General Assembly, not inconsistent with other provisions of this Constitution. . . The first commission under this amendment shall consist of the commissioners in office at the time of the adoption of this constitutional amendment. . . The qualifications, compensations, filling of vacancies, manner and time of election, powers and duties of members of this commission, including the chairman shall be such as are now or may hereafter be provided by the General Assembly." This provision of the Constitution does not change the character or nature of the office as to the powers, duties, and functions of the Public Service Commission. It simply makes the commission a constitutional agency of the State and not merely a creature of the General Assembly. The members of the commission in office continue with the same powers and duties as then provided by law, or that may be prescribed in the future. It does not clothe the commission or its members with the robe of the sovereign State nor immunize them from judicial process, in cases where their action is subject to judicial review.

The first act of the legislature creating the Railroad Commission, which was the predecessor in name of the present Public Service Commission (Ga. L. 1878-79, p. 125), enacted under the provisions of the Constitution of 1877, was reviewed by this court in the case of *Georgia Railroad* v. *Smith,* 70 *Ga.* 694, in which the constitutionality of the act was sustained. It was there held: "The railroad commissioners are officers appointed to carry into execution the laws passed by the legislature, and are constitutional officers." Though the exact question here presented does not seem to have been raised in any prior decision of this court where the Public Service Commission was a party defendant, there are many physical precedents where the commission has been sued and its orders reviewed, the latest of them being *Southern Bell Telephone &c. Co.* v. *Georgia Public Service Comm.,* 203 *Ga.* 832 (49 S. E. 2d, 38), which was instituted subsequently to the adoption of the Constitution of 1945. Therefore we do not believe that the mere fact that the Public Service Commission is a constitutional body makes an action against it one against the State.

The universally accepted rule of the Federal courts is that a suit by a public utility against a public service commission, where it is charged that the commission, in fixing a rate, issuing an order, or assessing a penalty, has acted illegally or abused its authority or violated the constitutional rights of the public utility to its injury and damage, is not such an action against the State as is prohibited by the Eleventh Amendment to the Constitution of the United States. Reagan *v.* Farmers' Loan and Trust Co., 154 U. S. 362 (14 Sup. Ct. 1047, 38 L. ed. 1014); Smyth *v.* Ames, 169 U. S. 466 (18 Sup. Ct. 418, 42 L. ed. 819); Mississippi Railroad Commission *v.* Illinois Central R. Co., 203 U. S. 335 (27 Sup. Ct. 90, 51 L. ed. 209); Prentis *v.* Atlantic Coast Line Co., 211 U. S. 210 (29 Sup. Ct. 67, 53 L. ed. 150); Consolidated Gas Co. *v.* New York, 157 Fed. 849.

Under Code § 93-416, if a public utility fails, omits, or neglects to obey, observe, or comply with any order, direction, or requirement of the commission heretofore or hereafter passed, it shall forfeit to the State a sum of not more than $5000 for each offense, and any action brought to enforce or collect this penalty shall be brought in the name of the State by direction of the

Governor. It is contended that the plaintiff in this action is seeking to enjoin the enforcement of orders of the commission, and that, since their enforcement can only be in the name of the State and by direction of the Governor, this proceeding is an attempt to enjoin State action. Nothing appears in the pleadings or evidence that indicates the commission has assessed any penalty, or that the Governor has given any direction to institute any action to enforce penalties, or that the State is attempting to enforce the same. Since it further appears that the plaintiff prays only that the defendant commission be restrained and enjoined from enforcing its orders of December 11 and 22, 1948, we are of the opinion that under the facts appearing in the record this contention is not sound. Compare *Wadley Southern Railroad Co.* v. *State,* 137 *Ga.* 497 (73 S. E. 741), affirmed in 235 U. S. 651 (35 Sup. Ct. 214, 59 L. ed. 405).

Code § 93-211 provides that the domicile of the Public Service Commission is fixed at the Capitol, "and no court of this State, other than those of Fulton County, shall have or take jurisdiction in any suit or proceeding brought or instituted against said commission or on account of any of its orders or rules."

This statute within itself is not sufficient to give consent of the State to be sued, if the action of the Public Service Commission in this case be held to be such action as to make the commission non-amenable to the courts, without the consent of the State. However, this Code provision does indicate a legislative construction of the powers and duties conferred by the General Assembly on the commission, and that the commission was subject to having its orders and rules reviewed by the courts. This section was given such construction by the Supreme Court of the United States in Wadley Southern Railroad Co. *v.* State, 235 U. S. 651, affirming 137 *Ga.* 497, supra.

Counsel for the defendants contend that the cases of *Printup* v. *Cherokee Railroad Co.,* 45 *Ga.* 365, *Ramsey* v. *Hamilton,* 181 *Ga.* 365 (182 S. E. 392), and *Musgrove* v. *Georgia Railroad & Banking Co.,* 204 *Ga.* 139 (49 S. E. 2d, 26), require a ruling here that the Public Service Commission cannot be sued without the consent of the State. We have very carefully examined these cases, but do not think that they are controlling of the present situation. The ruling in the *Ramsey* case turned on three points:

(1) that a suit by a taxpayer against State officials acting in their official positions involved the control and disbursing of State funds; (2) that the plaintiffs did not show that they had suffered any pecuniary damages; and (3) that the action was an attempt to control the action of a governmental agency, which held title to the property of the University System in the name of the State. In the *Printup* case, the action sought to control or affect property of the State, as all of the property affected was held by the defendant in his official capacity. In the *Musgrove* case, the plaintiff sought to enjoin an assessment of ad valorem taxes by the State Revenue Commissioner, on the ground that the plaintiff taxpayer was exempted from assessment by reason of the provisions of its charter, which was granted by the State. In that case, this court said: "The plaintiff is thus seeking a decree that would control the action and liability of the State and its officers forever with respect to such matter." The court further said: "The plaintiff is here seeking to enforce what it claims to be a contract with the State of Georgia, and the State therefore, as a corporate entity, has a distinct and direct interest in the subject-matter of the litigation, as distinguished from its mere governmental interest in the enforcement of its laws for the general welfare."

As we have stated, the particular factor for determining whether the action is one against the State is whether, from a consideration of the relief prayed, any right or interest of the State will be affected by a judgment that could be rendered under the pleadings and evidence. Here the plaintiff charges that the Public Service Commission, charged by the General Assembly with certain specific duties, has entered orders which would render the plaintiff subject to monetary penalties, and that the commission was totally without constitutional or statutory power to make these orders; and therefore, if the orders were enforced, they would cause the plaintiff to suffer irreparable damage, in violation of its rights guaranteed by the State and Federal Constitutions. If the plaintiff prevails in this action, the only parties whose interest will be adversely affected will be the consumers, to whom the orders directed refunds to be made; and if the defendant prevails, the only party affected will be the plaintiff, who would have to pay these refunds. We think that

what was said in the opinion rendered in the case of *Holcombe* v. *Georgia Milk Confederation,* 188 *Ga.* 358, 363 (3 S. E. 2d, 705), fits the situation here: "Where an act is attacked as unconstitutional, and it appears that plaintiff is threatened with irreparable injury to his property by reason of the acts of an officer proceeding under and by virtue of such act, the suit against such officer cannot be considered as one against the State, but the court will take jurisdiction of it as a suit against the officer as an individual acting without constitutional authority, and determine the question of the validity of the act. In the present case the State is not a party to the record. No judgment is asked which will take any property of the State, or fasten a lien on it, or interfere with the disposition of funds in its treasury, or compel the State indirectly, by controlling its officers, to affirmatively perform any contract, or pay any debt or direct the exercise of any discretion committed to its officers."

We are therefore of the opinion that the petition was not subject to demurrer on the ground that this action was one against the State.

■ By general demurrer the defendants assert that the plaintiff has an adequate remedy at law, it being contended: (1) that the plaintiff, within the statutory time, could have applied for a writ of certiorari to the superior court to review the orders of the Public Service Commission; and (2) if the orders are in fact and law beyond the powers of the Public Service Commission or are otherwise illegal, such defense would be good to any proceeding that might be brought to enforce them.

In *Mutual Light & Water Co.* v. *Brunswick,* 158 *Ga.* 677 (124 S. E. 178), this court held that an order of the Public Service Commission, after notice and hearing, lowering rates for electric light and power service by a public service corporation, was not such an order or judgment as could be reviewed by writ of certiorari. The action of the commission in that instance was held to be quasi-legislative in character; and this court (at p. 681) quoted with approval from Prentis *v.* Atlantic Coast Line Co., 211 U. S. 210 (supra), where it was stated: "The making of a rate by a legislative body, after hearing the interested parties, is not res judicata upon the validity of the rate when questioned by those parties in a suit in a court. . . A judicial inquiry investi-

gates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions, by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind."

The ruling in the *Mutual Light & Water* case was followed in *Southeastern Greyhound Lines* v. *Georgia Public Service Commission*, 181 *Ga.* 75 (181 S. E. 834, 102 A. L. R. 517), where it was held that an order of the Public Service Commission, after notice and hearing, revoking and canceling a certificate of public convenience issued to a motor common carrier, was not such an order or judgment as could be reviewed by writ of certiorari to the superior court. In *McIntyre* v. *Harrison*, 172 *Ga.* 65 (1), 73 (157 S. E. 499), this court held that injunction is an available remedy to restrain the Public Service Commission from undertaking to regulate a business over which the power of regulation has not been conferred upon that body. In the opinion in that case, it is stated: "Where the commission actually promulgates rules which they propose and threaten to enforce, the question as to their power under the law and the Constitution to do this may be raised and reviewed by the courts. *Long* v. *Railroad Commission*, 145 *Ga.* 353, 355 (89 S. E. 328). Equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, where the prevention of such prosecutions is essential to safeguard the right of property."

There is no specific statute in this State that provides the method or manner in which orders of the Public Service Commission can be reviewed. In *Southwestern Railroad* v. *Wright*, 68 *Ga.* 311 (1), affirmed in 116 U. S. 231 (6 Sup. Ct. 375, 29 L. ed. 626), it was held that, "Where any ministerial officer of this State is attempting to collect money out of a person, natural or artificial, under the forms of law, but without any valid law to authorize the process he uses and calls an execution for taxes, it is the duty of the courts, in a proper case, to arrest the proceeding in some of the modes known to the law, and afford relief to the party justly complaining." So, it has been held that,

where no remedy is provided by statute, injunction is the proper remedy. *Goldsmith* v. *Georgia Railroad Co.*, 62 *Ga.* 485; *City of Atlanta* v. *Jacobs*, 125 *Ga.* 523 (54 S. E. 534). Even if the defendants are correct in their contention that the orders of the Public Service Commission could be reviewed by the writ of certiorari, such remedy would not be available to the plaintiff in this action, for the reason that it charges that the orders of the commission in this case are void, and this court has held repeatedly that the writ of certiorari will not lie when the attack on the order or judgment in question is on the ground that it is void. *Levadas* v. *Beach*, 117 *Ga.* 178 (43 S. E. 418); *Allied Mortgage Companies* v. *Gilbert*, 189 *Ga.* 756 (2) (8 S. E. 2d, 45).

It is further contended that, even if the orders of the commission "are in fact and law beyond the power of the commission or otherwise illegal, such defense would be good to any proceeding that might be brought to enforce them." In other words, the defendants assert that the plaintiff should wait until an effort is made on the part of the State to collect penalties for a violation of the orders, and then in such proceedings the plaintiff could defend on the ground here asserted.

The Supreme Court of the United States in many cases has held that, where a public service commission or board prescribes rates under which the utility company affected claims that its property will be confiscated, the State must provide a fair opportunity for submitting the issue to a judicial tribunal for a determination upon its own independent judgment as to both law and facts, otherwise the order would be void because in conflict with the due-process clause of the Fourteenth Amendment. Ex parte Young, 209 U. S. 123 (28 Sup. Ct. 441, 52 L. ed. 714); Missouri Pacific Railway Co. *v.* Tucker, 230 U. S. 340 (33 Sup. Ct. 961, 57 L. ed. 1507); Wadley Southern Railway Co. *v.* Georgia, 235 U. S. 651 (35 Sup. Ct. 214, 59 L. ed. 405); Ohio Valley Water Co. *v.* Ben Avon Borough, 253 U. S. 287 (40 Sup. Ct. 527, 64 L. ed. 908). In the Wadley Southern Railway case, supra, the Georgia Railroad Commission passed an order directing the railroad to cease certain discriminatory practices. The railroad company did not file any suit to enjoin enforcement, but waited until an action had been instituted un-

der the provision of law now embodied in Code § 93-416, and in that action contended that the order of the commission was invalid, and that the act providing the penalty was unconstitutional. The Supreme Court of the United States held that due process of law had been afforded, because the railroad company had the right to go into a court of equity and raise the issue as to the validity of the order, under the provisions of what is now Code § 93-211, which is the section fixing the venue for the bringing of actions against the Public Service Commission. In the opinion in that case (at pp. 666-7), Mr. Justice Lamar, referring to the Code section mentioned, said: "From an examination of that section of the Code it is quite clear that it recognizes the right to a judicial review of administrative orders. Until it has been given a contrary construction by the state court, it must be here construed in such a way as to leave it valid and as conferring that sort of right which furnishes the adequate and available remedy which meets the requirement of the Constitution. Any other construction would not only impute to the legislature an intent to deny the equal protection of the law and to permit the carrier to be deprived of property without due process of law, but it would operate to nullify the penalty section as a whole. Giving then § 2625 [93-211] that construction which makes it constitutional and it appears that the laws of Georgia gave to the Wadley Southern R. R. Co. the right to a judicial review of the order of March 12, 1910, by a suit against the commission." In other words, the court held that, if the railroad company had not been provided with an adequate remedy for contesting the validity of these orders before the penalties were sought to be collected, it would have been denied due process of law in violation of the Fourteenth Amendment, and under the rulings in Chicago &c. Ry. v. Minnesota, 134 U. S. 418 (10 Sup. Ct. 462, 33 L. ed. 972), and Ex parte Young, 209 U. S. 123 (supra), unless the State provides access for review by a judicial tribunal, regulatory orders of a public service commission fixing rates would be unconstitutional.

Therefore we hold that the ground of demurrer that the plaintiff had an adequate remedy at law, either by the writ of certiorari, or by asserting the invalidity of the orders upon any future action to enforce the penalties prescribed by law for a violation of the commission's orders, was properly overruled.

■ We come now to the question as to whether or not the orders of December 11 and 22, 1948, are such orders as the commission had power and authority to issue. The order is entitled: "In re: Rule Nisi against Atlanta Gas Light Company to show cause why the commission should not require adjustments to Rate N-4 Wholesale Natural Gas Consumers, reflecting the interruptible character of gas service provided and why a rate for firm gas service should not be prescribed."

In the preamble preceding the order, it is recited generally that, as a result of dissatisfaction as expressed by complaints from large wholesale natural gas customers of the Atlanta Gas Light Company asserting inadequacy of service to customers using more than 200,000 cubic feet per day, the rule nisi of June 2, 1948, instigating an investigation and hearing into the question of adequacy of service, "looking towards the adoption of a firm gas rate schedule, as well as the propriety of adjustments in past charges to N-4 rate customers to reflect the actual character of service provided," was issued. It was then recited that certain hearings were had before the commission in regard to service under this and other rates, and an order issued on December 22, 1947, was recited.

The recitation in the premable to the order as granted is as follows: "After hearing thereon, an order was issued on December 22, 1947, which provided that the Atlanta Gas Light Company should retroactively apply the N-9 rate schedule to gas consumed by any N-4 customer, with the charges on the N-9 rate computed on the amount of firm gas delivered, if the N-4 customer would elect to contract for gas service on the N-9 rate on or before January 15, 1948. While some of the N-4 customers elected to take advantage of this provision, it appears that a substantial number did not choose to accept the refund involved, for the reason they preferred to retain the schedule which they felt should provide firm gas service. The record of interruptions since that time, however, indicates that the N-4 customers have not received service with any lesser degree of interruption than they would have received had they contracted for service under the N-9 schedule. It appears, therefore, that an adjustment in the charges is necessary to reflect the character of service provided the N-4 customers."

It is then recited that the order of December 22, 1947, has not been followed, "and this is another reason of necessity for the retroactive adjustment here prescribed." The order of December 11 was stricken in part, and the amended order which is complained of here is as follows: "Ordered further, that the Atlanta Gas Light Company shall adjust its past billing for gas service to its existing N-4 customers whose service has been interrupted subsequent to January 2, 1947, the total adjustment to represent the difference between the actual charges made for gas service and the amount which those charges would have been had the interrupted gas deliveries to the N-4 customers been calculated as interruptible gas on the N-9 rate with the demand charge applied to the actual daily delivery at the time of greatest curtailment. The adjustments shall be calculated over the 12 months' period ending in the month in which curtailment was made, but not including any period prior to January 2, 1947. The total adjustment receivable by each such customer shall be calculated, and there shall be deducted from each monthly bill of each such customer one-twelfth of said total adjustment for such customer until the full adjustment amount is satisfied. The Atlanta Gas Light Company shall file with the commission a statement showing the amount of adjustment each affected customer will receive."

It appears from the record that, at the time the December, 1948, orders were passed, fourteen customers of the plaintiff were affected favorably or unfavorably by the provisions for making adjustments for service charges which had been paid by them during the period covered by the order. It appears from the evidence in the record that on January 10, 1947, the company set up two classifications and two separate rate schedules for large wholesale consumers of gas, which rate schedules were approved by the commission. One schedule was designated as Rate N-4, which provided for uninterruptible gas service, and the other schedule was designated as Rate N-9, which called for interruptible gas service. Rate N-4 prescribed a higher rate than Rate N-9. These orders complained of required adjustments to be made to these fourteen customers of the company whose service had been interrupted subsequently to January 2, 1947. The orders required the company to make the adjust-

ments for the service charges collected from January 2, 1947, to the dates of the orders, so that the total adjustments would pay "the difference between the actual charges made for gas service and the amount which these charges would have been had the interrupted gas deliveries to the N-4 customers been calculated as interruptible gas on the N-9 rate with the demand charge applied to the actual daily delivery at the time of greatest curtailment." The manner in which the order provided that the adjustments should be made required that the total adjustment receivable by each customer "shall be calculated and there shall be deducted from each monthly bill of each such customer one-twelfth of said total adjustment for such customer until the full adjustment amount is satisfied." The effect of the order, in simple terms, amounted to this: If X, a customer of the company, subsequently to January 2, 1947, received and paid for gas on the N-4 rate, the company was required to compute what he would have paid for interruptible gas service under the N-9 rate; and taking the difference between the amounts received under the N-4 rate and what he would have paid under the N-9 rate, the company was required to calculate the adjustment over a 12-month period ending in the month in which the curtailment was made; and if, assuming that X had paid $100 more under the N-4 rate than he would have paid under the N-9 rate, the company was required to deduct thereafter from each month's bill one-twelfth of the $100, the effect of which would be to refund to X the difference between the two rates.

Having stated the provisions of the orders of the commission and the practical effect of their operation, we now turn to the statutes which provide the powers of the commission, to ascertain whether its orders come within its powers. The commission has power to make any investigation of the papers of a public utility. Code, § 93-301. It has power to prescribe and enforce reasonable rules and regulations as to receipt and delivery by railroads of freight. § 93-302. All contracts and arrangements between railroads must be submitted for approval to the commission. § 93-303. It has general supervision over gas companies, and may require them to establish and maintain such public service and facilities as may be reasonable and just, either by general rules or by special orders in particular cases,

require publication of schedules; examine the books of companies; and prescribe a uniform system of accounts. § 93-307. It has power to determine exclusively what are just and reasonable rates and charges; to make such reasonable rules and regulations as may be necessary to prevent unjust discrimination (§ 93-309); to make schedules of rates for public utilities, which are to be taken in law courts as sufficient evidence that the rates therein fixed are just and reasonable rates or charges; and "from time to time and as often as the circumstances may require, change and revise such schedules." § 93-310. When any rate schedule is made or revised, notice must be given by publication. § 93-311.

There are many provisions of the act which assess or fix penalties upon railroads, which are not applicable here. In § 93-416 is a general provision as to penalties, providing that every public utility shall obey, observe, and comply with every order made by the Public Service Commission under authority of law. If any public utility coming within the provisions of this law shall violate, fail, omit or neglect to obey, observe, and comply with any order, direction, or requirement of the commission, it shall forfeit to the State a sum of not less than $5000 for each offense, with every violation constituting a separate and distinct offense. It is provided that an action for the recovery of such penalty shall be brought in the name of the State, by direction of the Governor. We do not find any statutory provision which grants to the commission, either under the provision as to penalties or as to rule making, any authority to order a public utility to pay damages, liquidated or unliquidated, to a customer of a public utility. The only power to make a rule that relates to the payment of money is the power given to the commission to prescribe rules and regulations, penalties to be paid by railroads, to adjust overcharges, losses, or failure to promptly receive, carry, and deliver freight, or as to furnishing cars. These provisions do not empower the commission to order the payment of any sum of money. These penalties are recoverable in an action at law. If a railroad company discriminates against storage rates, or rebates storage rates, or charges any rate for storage higher than those fixed by the commission, a right of action is given the person discriminated against. Code, §§ 93-403,

93-404, 93-405. If a railroad fails to route shipments by a route designated by the shipper, the injured person may sue the railroad. § 93-409. If a railroad company discriminates in its rates in favor of any route or line connected with it against any other line or route, the company is liable to the person injured. § 93-411. If a railroad company violates any rule or regulation prescribed by the Public Service Commission, and by reason of such violation inflicts any injury to any person, such person is given a right of action. § 93-413.

So, we do not find in the statutes giving to the Public Service Commission the right to make rules and regulations as to railroads any right to make orders whereby any money payments could be required of railroads to shippers or other persons. We think it highly significant that in the first act creating the Railroad Commission, the predecessor in name of the Public Service Commission, the General Assembly gave to the commission power to fix the "recompense" to be paid by a railroad company for violation of rules and regulations of the commission, and later withdrew this power. Section IX of the act of October 14, 1879 (Ga. L. 1878-79, 125, 129), provided that, "if any railroad company doing business in this State, by its agents or employees shall be guilty of a violation of the rules and regulations provided and prescribed by said commissioners, and if, after due notice of such violation given to the principal officer thereof, ample and full recompense for the wrong or injury done thereby to any person or corporation, as may be directed by said commissioners, shall not be made within thirty days from the time of such notice, such company shall incur a penalty for each offense of not less than one thousand dollars." This section, as amended by the act of 1890 (Ga. L. 1890-91, p. 65), added to section IX the following: "The commissioners shall have the power, in their discretion, to institute suit, without notice, for any violation of any of said rules and regulations, whenever, in their opinion, the circumstances authorize it, of which they shall be the sole judges; and after the institution of said suit there shall be no settlement of the same without the consent of said commissioners." These acts were codified as section 2196 in the Code of 1895. The General Assembly, by section 10 of the act of 1907 (Ga. L. 1907, 72, 78), repealed Code § 2196, and since that time the commis-

sioners have had no authority to fix "recompense." We find nothing in the powers given to the Public Service Commission that would authorize it to grant reparations or compensatory damages, either by reason of a public utility collecting unreasonable rates, or by reason of the violation of any rule or regulation of the commission. It was held by this court in *Southern Railway Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665), that the commission does not have the power to impose forfeitures or to provide for pecuniary recoveries at their will.

We do not here have a case where a public utility is charged with having collected an unjust or unreasonable rate, but the fourteen customers to whom the plaintiff was ordered to make adjustments had paid the rate fixed or established by the commission; and under the provisions of Code, § 93-310, such schedules must be taken "as sufficient evidence that the rates therein fixed are just and reasonable rates or charges." The customers paid and the company collected the charges for service according to the established rate which the commission, at the time they were approved, determined to be just and reasonable. The commission, by its orders, in effect stated that by reason of facts developing subsequently to the time the rate was fixed, these customers should have been paying the rate prescribed in schedule N-9, and in effect prescribed retroactively the schedule N-9 to these customers who had paid under the N-4 schedule. As we have previously noted, when the commission establishes a rate, such act is legislative in character, and binds all parties concerned in the same manner as if the rate had been fixed by an act of the General Assembly. Like an act of the legislature, a rate is made to operate in the future, and cannot be made to apply retroactively. Even if the commission, after fixing a rate or charge, subsequently determines that the rate was unreasonably high, it has no authority in the revision of the rate to require that refunds or reparations be made of collections under the rate which had been established. If, after fixing a rate which the commission determines to be just and reasonable, it decides that the rate is unreasonable or unjust, it has the right under the law at any time to revise or amend its rulings or orders but, like legislation in general, these revised orders look to the future, and cannot be applied retroactively. As we view it, the

commission had no more authority to require refunds of rates collected under a lawful rate than it would have to determine that the rate previously fixed had been unreasonably low, and—by reason of the public utility having suffered a loss—to require the customers to pay the difference between the amount which they actually paid for the service and the amount which they should have paid in the past as a just and reasonable charge.

There is no case in this State which deals with the power of the commission to make reparations or refunds, and with the exception of one adjudication, to which we will call attention later in this opinion, we have not found in other jurisdictions any decision that holds contrary to our conclusion that the commission was without power or authority to order adjustments or refunds such as those here complained of. The leading case on the question of the authority of a public service commission to make reparations is that of Arizona Grocery Co. v. Atchison &c. Ry. Co., 284 U. S. 370 (52 Sup. Ct. 183, 76 L. ed. 348). Under the Interstate Commerce Act, where a carrier files with the Interstate Commerce Commission its schedule of rates, they are deemed to be the legal rates. Under the act, the commission being empowered to make reparations, the shipper could apply to the commission asking that reparations be made, if he could show that the rate charged was unreasonable. In that case, the commission had put into effect a schedule of rates for transporting a certain commodity, and subsequently, on complaint of shippers, this fixed rate was reduced and the commission ordered reparations in the amount by which the rates paid exceeded those found to be reasonable rates during a prior period of time. The railroad company did not pay the amount awarded, and an action was brought for its recovery by the shipper. The court held: 1. "Where the commission has, upon complaint and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the commission now holds it should have decided in the earlier proceedings to be a reasonable rate." 2. "When the com-

mission by its authority under the Transportation Act declares a specific rate to be the reasonable and lawful rate for the future, it exercises a legislative function and its pronouncement has the force of a statute. This is well established as to the fixing of specific rates by state commissions, and in this respect there is no difference between the authority delegated by a state legislature and that conferred by Congress." In the opinion Mr. Justice Roberts, speaking for the court, said:

"The report and order of 1921 involved in the present case declared in terms that 96.5 cents was, and for the future would be, a reasonable rate. There can be no question that when the carriers, pursuant to that finding, published a rate of 96 cents, the legal rate thus established, to which they and the shipper were bound to conform, became by virtue of the commission's order also a lawful—that is a reasonable—rate.

"Specific rates prescribed for the future take the place of the legal tariff rates theretofore in force by the voluntary action of the carriers, and themselves become the legal rates. As to such rates there is therefore no difference between the legal or published tariff rate and the lawful rate. The carrier cannot change a rate so prescribed and take its chances of an adjudication that the substituted rate will be found reasonable. It is bound to conform to the order of the commission. If that body sets too low a rate, the carrier has no redress save a new hearing and the fixing of a more adequate rate for the future. It cannot have reparation from the shippers for a rate collected under the order upon the ground that it was unreasonably low. This is true because the commission, in naming the rate, speaks in its quasi-legislative capacity. The prescription of a maximum rate, or maximum and minimum rates, is as legislative in quality as the fixing of a specified rate." Pp. 387-88. "As respects its future conduct the carrier is entitled to rely upon the declaration as to what will be a lawful, that is, a reasonable, rate; and if the order merely sets limits it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi-judicial capacity, ignore its own pronouncement promulgated in its quasi-legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed." P. 389.

In Michigan Bell Telephone Co. v. Michigan Public Service Commission, 315 Mich. 533 (24 N. W. 2d, 200), it was held that the Public Service Commission had no express or implied power to reduce rates or earnings of a telephone company retroactively.

In Farmers Union Livestock Commission v. Union Pacific Railroad Co., 135 Neb. 689 (283 N. W. 498), the court held that a Nebraska statute permitting the State Railroad Commission to award reparations to be paid by a railroad company to a shipper does not authorize the commission to retroactively condemn as unlawful a rate or charge "previously established . . and subject a carrier which has conformed thereto to the payment of reparations measured by what the railway commission now holds it should have decided in the earlier proceedings to be a reasonable and lawful rate." It was held that the statute authorizing reparations under such circumstances was forbidden by the due-process clauses of the State and Federal Constitutions. In the opinion (at p. 704), it was said: "It seems quite apparent to us that the railway commission is without authority to set aside a rate or charge previously fixed by it on the ground that it is unreasonable as now viewed and proceed to grant reparations. Such a rate or charge is the reasonable, just and legal rate or charge until abrogated by the railway commission, or other competent authority, and an award of reparations based on the unreasonableness of such rate or charge is not authorized by section 75-510, Comp. St. 1929."

The Supreme Court of Kansas, in State ex rel. Boynton v. Public Service Commission of Kansas, 135 Kan. 491 (11 Pac. 2d, 999) held the statutory provision for issuance of reparations certificates for unreasonable charges exacted by carriers within six years previous to be void as impairing the obligation of a contract. In the opinion, the court said that, where the reasonableness of a rate had been the subject of deliberate inquiry in which the carriers, the shippers, and the commission's own experts had participated, the rate thereafter prescribed by the commission and put into effect by the carrier ought to be collected by the carrier "without misgiving that at some future time a further hearing of the commission may be had and more evidence taken and a different conclusion reached and those rates condemned as unreasonable and reparation certificates allowed

for the difference between the rates which the commission did authorize and the rates which it should have authorized. Such a method of regulating public utilities has none of the earmarks of due process of law nor of the simplest notions of justice. Nor would it be worth the while of any shipper to receive such a reparation certificate, for it would not serve as a justiciable basis of recovery." For similar rulings, see Northern Pacific R. Co. *v.* Department of Public Works, 136 Wash. 389 (240 Pac. 362); Denver &c. R. Co. *v.* Public Utilities Commission, 73 Utah 139 (272 Pac. 939); Texas & P. R. Co. *v.* Railroad Commission of Louisiana, 137 La. 1059 (69 So. 837); Missouri &c. R. Co. *v.* Railroad Commission of Texas (Tex.), 3 S. W. 2d, 489; Texas Co. *v.* Chicago & Alton R. Co., 117 Fed. 2d, 210; Woodrich *v.* Northern Pacific Ry. Co., 71 Fed. 2d, 732; Commonwealth ex rel Town of Apalachia *v.* Old Dominion Power Co., 184 Va. 6 (34 S. E. 2d, 364).

The only case that counsel cite as authority for the contention that the commission in this case had authority to adjudge that the previous rate charge was unreasonably high by reason of insufficient service, and to award refunds or readjustments retroactively, is that of Oklahoma Natural Gas Co. *v.* State, 78 Okla. 5 (188 Pac. 338), which was affirmed in 258 U. S. 234 (42 Sup. Ct. 287, 66 L. ed. 590). That case involved Oklahoma statutes. It is true that these statutes did not specifically authorize the Corporation Commission to make refunds. The Oklahoma statutes granted to the State Corporation Commission full power to make rules and regulations pertaining to rates and service of public utilities. However, there is this fundamental difference between the Oklahoma case and the laws of this State pertaining to the Georgia Public Service Commission: In upholding the State Corporation Commission in making awards or refunds, the Supreme Court of Oklahoma held that "The power of the Corporation Commission to regulate rates and practices of gas utilities under this act *is supreme*, subject only to limitations imposed by the legislature" (italics ours), whereas the Georgia Public Service Commission has only such powers as are granted to it by the statutes of this State. "The powers granted to the Public Service Commission of Georgia are all merely statutory." *Georgia Public Service Comm.* v. *Albany*, 180 *Ga.*

355 (1) (179 S. E. 369). "It has only such powers as the legislature has expressly, or by fair implication, conferred upon it." *Zuber* v. *Southern R. Co.,* 9 *Ga. App.* 539 (2) (71 S. E. 937). It is significant that the Supreme Court of Oklahoma in a later decision follows the rule laid down in the courts of other jurisdictions, to which we have referred. In St. Louis &c. Ry. Co. v. State, 155 Okla. 236 (8 Pac. 2d, 744), it was held: "The corporation commission is not empowered to award reparations for payments on freight shipments, where the charges, when made, were in accordance with the rates therefor, fixed by the corporation commission." In the opinion (p. 239), the court said: "The fact that the commission would have changed the rate it had prescribed, had its attention been called to the matter, by no means would justify a violation of the retroactive section of the Constitution."

It is further argued by counsel for the defendant that the effect of the orders of the commission is to find that the rates previously paid by the affected customers under rate N-4 are unjust and unreasonable, for the reason that they only received the service that customers under rate N-9 received; and that the commission, having the power to prevent unjust discrimination, has also power to provide a remedy to compel the plaintiff to restore to customers unjustly discriminated against the difference between the two rates. We cannot agree to this contention for two reasons. First, even though it be conceded that the gas company has practiced unjust discrimination as between the two rate classes, the only aggrieved parties would be the customers discriminated against, and the right of action would be in the customers. Pennsylvania Railroad Co. v. International Coal Mining Co., 230 U. S. 184 (33 Sup. Ct. 893, 57 L. ed. 1446); Interstate Commerce Commission v. United States ex rel Campbell, 289 U. S. 385 (53 Sup. Ct. 607, 77 L. ed. 1273). Secondly, the actual effect of such orders is to require the plaintiff to make refunds or reparations to be applied retroactively, and the commission is without power to grant such order.

We therefore conclude that so much of the order of December 11, as amended by the order of December 22, 1948, as requires the company to make adjustments, a copy of which is set out in this opinion, was beyond the lawful powers of the Public Service Commission, and void.

■ Since we have held certain provisions of the December, 1948, orders of the commission to be void on other grounds, it becomes unnecessary to determine whether such orders were violative of stated paragraphs of the State and Federal Constitutions.

■ During the trial, the defendants sought to introduce certain oral and documentary evidence, to the admission of which objections of the plaintiff were sustained and the proffered evidence was not allowed. The defendants made separate assignments of error in each instance where the court refused admission of such evidence. However, counsel for the defendants in their brief argue these assignments of error only in a general manner. The testimony offered concerned the past history and setting of the two rates, N-4 and N-9, and many hearings that were had before the Public Service Commission. This evidence was offered mainly for two purposes—first, to show the prior history as between the plaintiff and the Public Service Commission and customers in the matter of rates; and second, to show that the plaintiff, by reason of its conduct on said hearings (at one time making voluntary reparations), was now estopped to question the validity of the December, 1948, orders.

We have examined these assignments of error, and do not find any of them meritorious, for two reasons: first, since we have held that the December orders are void for the reason that the commission had no power to issue them, the matters which occurred previous to the issuance of said orders would not be relevant or material; and secondly, "Not even estoppel can legalize or vitalize that which the law declares unlawful and void." *Flournoy* v. *Highlands Hotel Co.*, 170 *Ga.* 467, 471 (153 S. E. 26).

■ The trial judge did not err in overruling all grounds of demurrer and in granting the interlocutory relief prayed.

*Judgment affirmed. Atkinson, P. J., concurs; Duckworth, C. J., Head and Hawkins, JJ., concur in the judgment only; Wyatt, and Candler, JJ., dissent.*